[Sac. No. 3058. In Bank.—October 8, 1920.]

In the Matter of the Estate of ELLEN M. WILSON, Deceased. ETTA M. McCONNELL, as Executrix, etc., Respondent, v. E. PHOEBE DOOLITTLE et al., Appellants.

[1] ESTATES OF DECEASED PERSONS—CONSTRUCTION OF WILLS—INTENTION OF TESTATOR.—The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, which intention must be given effect as far as possible. Statutory rules of interpretation are to be followed in so far as they aid in determining the intention of the testator, but they are all subject to the fundamental rule that the intention as shown by the will must prevail.

[2] ID.—WORDS OF WILL — STATUTORY RULES OF INTERPRETATION.— The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected and that other can be ascertained, and technical words are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense.

[3] ID.—TECHNICAL MEANING OF "HEIRS."—The word "heirs" is a technical term, and in its technical sense one's "heirs" means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of the statutes relative to succession.

---

1. Law governing construction of wills, note, 2 L. R. A. (N. S.) 443.

3. "Heirs" construed to mean children, note, Ann. Cas. 1914B, 70; as including widow, note, Ann. Cas. 1915D, 1178.

[4] ID.—CONSTRUCTION OF WILL — PARTIES ENTITLED TO REMAINDER UPON TERMINATION OF LIFE ESTATE — "HEIRS" OF TESTATRIX.— Where a testatrix gave all her real property to her son for life with remainder over at his death to his then living children, and then provided that if the son died without issue such property should be distributed "among my heirs as provided by the laws of the state of California, the same as if I had died intestate," the nephews and nieces of the testatrix, determined as of · the date of the termination of the life estate of the son, who died without issue, are entitled to such remainder, as the "heirs" of the testatrix, as against the surviving wife of the son, since the context of the will clearly indicated that the word "heirs" was not used in a technical sense, but was intended to designate only those who would have been her heirs but for her son, either at the time of her death or at the termination of the life estate, by the death of the son.

APPEAL from a decree of final distribution and from an order settling final accounts of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Grove L. Johnson and Wm. M. Sims for Appellants.

White, Miller, Needham & Harber for Respondent.

ANGELLOTTI, C. J.—We have here appeals from a decree of final distribution and from an order settling two final accounts. It is stipulated that if the decree of distribution is affirmed, the order settling the accounts shall likewise be affirmed, and that if the decree of distribution is reversed, the order settling the accounts must likewise be reversed.

The question presented on the appeal from the decree of final distribution is one of the construction to be given to certain provisions of the will of the deceased, in view of certain events that have happened since the death of deceased.

By her will, dated April 30, 1896, which was prepared by "an attorney of recognized standing and ability throughout the state of California," deceased first gave all her personal property to her son, Thaddeus McConnell, "to have and to hold the same absolutely, for his own use and benefit." Then followed the provisions as to her real property, which were, omitting certain words not important here, as follows:

"All the real property . . . I give and devise unto my said son, to have and to hold the same for and during the term of his life; and at his death the same shall go to and be the property of his then living children, . . . it being my intention to devise unto him a life-estate in the whole of said realty, with remainder over at his death, to his then living children; and if he leave no issue, then upon his death, all such real property shall be distributed among my heirs, as provided by the laws of the State of California, the same as if I had died intestate.

"If my said son shall die before me, leaving issue, then all my property and estate, of every kind, shall go to such issue, to whom I hereby give, devise and bequeath the same; but if he shall die before me without issue, then I give, devise and bequeath the whole of my property and estate . . . unto my heirs, . . . the same to be distributed among them according to the Californian laws of succession in cases of intestacy."

The son was designated as executor without bonds.

The first codicil, dated February 14, 1898, and admitted to probate as a part of the will, gave four thousand dollars and a diamond ring to her niece, Carrie J. Doolittle, and contained the following provision, viz.: "I also give and bequeath to my beloved son Thaddeus C. McConnell my ranch property known as the Stickney Place to be his own property, in fee simple, free from all claims or conditions whatsoever."

On June 2, 1899, she executed a second codicil, which merely revoked the legacy of four thousand dollars to Carrie J. Doolittle, the amount of the same having been given her that day in money, and confirmed and ratified her previously executed will in all other respects.

At the date of the original will Mrs. Wilson was a widow of the age of about sixty years, and Thaddeus C. McConnell, her son by her first husband, was her only child. He was then about thirty-one years of age and married, but without issue. He had then been married about four years. He was possessed of real and personal property, received by him from his father's estate, having taken one-half of such estate, while his mother took the other half. Mrs. Wilson's estate consisted entirely of the property derived from her first husband's estate and additional property acquired through her

own subsequent investments. At the date of the execution of the will she had several brothers and sisters still living, and numerous nieces and nephews, and the relations between her and her relatives were "very friendly." In the year 1900, Thaddeus C. McConnell "had born to him a son." Mrs. Wilson died on or about April 7, 1907, leaving as her sole heir at law her son, Thaddeus C. McConnell. She left surviving her a brother and numerous nieces and nephews. The son of Thaddeus C. McConnell was accidentally killed in the year 1917, unmarried and without issue. Subsequent to her death and prior to the death of Thaddeus C. McConnell, her brother and one of the nieces, Ellen Flanagan Purchase, died, leaving certain heirs at law. On April 10, 1919, Thaddeus C. McConnell died testate, without living issue, and leaving as his sole heir at law and also his sole devisee and legatee, his widow, Etta M. McConnell.

This being the situation, the nineteen nieces and nephews of Mrs. Wilson surviving Thaddeus C. McConnell claimed to be entitled under the will to all of the real estate left by Mrs. Wilson, except the Stickney property given absolutely by the first codicil to the son. On the other hand, Etta M. McConnell, the surviving wife of Thaddeus C. McConnell, claimed to be entitled to *all* of the property, including such realty. This claim must, of necessity, be based upon the theory that her husband succeeded to the same under Mrs. Wilson's will, and that it has passed from him to her as his sole heir, legatee and devisee. As to the personalty and the real property known as the Stickney property her claim is concededly well based. The only dispute is as to the remaining realty. The superior court sustained the claim of Mrs. McConnell in all respects and distributed all the property of Mrs. Wilson, including all the real property, to her. The nieces and nephews of Mrs. Wilson appeal from this decree.

The question presented is, of course, as to the intention of the testatrix as disclosed by the language she has used in her will, taking into view, in case of any uncertainty arising upon the face of the will, the circumstances under which it was made, exclusive of her oral declarations. [1] The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and

this intention must be given effect as far as possible. (Civ. Code, secs. 1317, 1318.) Statutory rules of interpretation are to be followed in so far as they aid in determining the intention of the testator, but they are all subject to the fundamental rule that the intention *as shown by the will* must prevail. Respondent's claim is based on the use of the words "my heirs, as provided by the laws of the state of California, the same as if I had died intestate," designating to whom this real property shall go in the event of the death, after her own death, of her son without living issue. [2] Our statutory rules of interpretation of wills provide that "the words of a will are to be taken in their ordinary and grammatical sense, *unless a clear intention to use them in another sense* can be collected, and that other can be ascertained" (Civ. Code, sec. 1324), and that "technical words in a will are to be taken in their technical sense, *unless the context clearly indicates a contrary intention,* or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense." (Civ. Code, sec. 1327.) [3] The word "heirs" is a technical term, and in its "technical sense" one's "heirs" means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statutes relative to succession. (See *Estate of Watts,* 179 Cal. 20, 22, [175 Pac. 415].) In this sense of the word the sole "*heir*" of the deceased was the son, Thaddeus C. McConnell, for at the time of the making of the will and thenceforth to the death of deceased he was entitled under our succession statutes to succeed to the whole of her estate in the event of her death without a will. (Civ. Code, subd. 1, sec. 1386.) It is upon this fact that counsel for respondent base their claim. It is urged that no one can come within the designation "my heirs" other than the son, with the result that the will should be construed substantially as giving the real property absolutely to the son subject only to the contingency of his dying with issue surviving him, in which event it was to go on his death to such issue.

In support of their construction of the will learned counsel for respondent have cited and discussed very many decisions of courts of last resort. It may be said as to all of them that none disputes the paramount rule that the ultimate question is the intention of the testator as expressed

in the will, and that technical rules of interpretation must yield to an intention clearly expressed. The real question discussed in all of them is, What did the testator mean in view of the language he has used in his will, in the light afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will? Such is the question here involved. We have said: "Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills." (*Estate of Henderson*, 161 Cal. 353, 357, [119 Pac. 496, 498]. See, also, *Rosenberg* v. *Frank*, 58 Cal. 387; *Le Breton* v. *Cook*, 107 Cal. 410, 416, [40 Pac. 552].)

[4] To our minds, it seems perfectly clear from the will, in the light of those circumstances which we are entitled to consider, that the testatrix could not have intended her son to constitute or be included within the "my heirs" "among whom" the real property was to be distributed upon the death of the son without issue surviving. It is true that it has often been held that there is no legal inconsistency in an heir who is made a life tenant by a will being included among "the heirs" to whom the remainder is given. If there was nothing in the will here involved to show that others than the son were intended by the designation "my heirs" it might well be claimed that the courts must accept the term in its technical meaning as including only those who, at the moment of the death of the testatrix, constituted her heirs at law, viz., her son. (See *Estate of Watts, supra.*) But the very language upon which respondent must rely, viz., "then upon his [her son's] death, all such real property shall be distributed *among my heirs,* as provided by the laws of the state of California, the same as if I had died intestate," is opposed to the theory of any such intention. It is self-evident that while the son, who was in the strict technical sense the sole heir apparent of this widow of sixty years of age, was an heir, he could not be "heirs," nor could the real property be distributed "among" him, the term "distributed among" necessarily referring "to a gift to more than two" heirs. (See *In re Hildebrandt's*

*Estate* (Pa.), 110 Atl. 760). It is almost impossible to conceive that the testatrix, knowing, as she must be held to have known, that her son was the sole heir at law, taking the word "heir" in the technical sense, would have used this language, "distributed among my heirs," etc., to indicate a gift to him.

Especially is this true in view of the fact that wherever before or after these words she referred to her son in the will she designated him as "my son, Thaddeus McConnell," or "my said son," or "my said son, Thaddeus McConnell," indicating that in every case where she intended to provide for or refer to him, she thus described him. If she had intended him or his heirs or devisees to take the real property absolutely in the event that he died after her leaving no issue, would she not necessarily have said, in view of the way in which she had theretofore referred to him, that in that event the real property was to be distributed to "my said son" or to "the heirs or devisees of my said son" instead of "shall be distributed *among my heirs*," etc?

Furthermore, the intention to limit the interest of the son in the real property to a life estate appears to be most definitely and clearly expressed. Not only did the testatrix say that she gives the property to him "to have and to hold the same for and during the term of his life; and at his death the same shall go to and be the property of his then living children," but she went further and said, "it being my intention to devise unto him a life estate in the whole of said realty, with remainder over at his death, to his then living children," following this with the provision that "if he leave no issue, then *upon his death*, all such real property shall be distributed *among my heirs*," etc. It seems clear that in so far as her son was concerned, the provisions specifically made for him were intended to be the sole provisions in his behalf, and that by the term "my heirs" who were to take in default of issue of her son surviving him was meant *her* next of kin other than her son.

This view is strengthened by the provision made in the next paragraph as to those who shall take her property if her son should die before her. If he died leaving issue, the property was to go to such issue, but if he died before her without issue, then she gives all her property "*unto my heirs*—the same to be distributed among them according to

the Californian laws of succession in cases of intestacy," to the entire exclusion of the wife of the son, or any heir, devisee, or legatee of the son.

Particular reliance is placed by counsel for respondent on the words following "my heirs," viz.: "as provided by the laws of the state of California, the same as if I had died intestate," but we do not see that they strengthen their claim that the son was intended to be included within the term "my heirs." Obviously, this language referred simply to the manner of distribution among the persons constituting "my heirs" "among" whom the property was to be distributed. She gives the property to "my heirs" to be distributed among them in the same manner as is provided by law in cases of intestacy. This thought was clearly in mind with regard to the succeeding paragraph, the paragraph dealing with the property in the event that the son died before her, and is perhaps better expressed therein. She there gave the property in a certain contingency "unto my heirs—the same to be distributed among them according to the Californian laws of succession in cases of intestacy." In each the idea is that the property is given to the persons denominated "my heirs" to be apportioned among them in the manner provided by the succession statutes in case of intestacy.

As we have practically said, it is clearly manifest on the face of this will, when considered as an entirety, that the testatrix could not have intended her son or any person claiming under her son to be included within the "my heirs" "among whom" in a certain contingency the real property was to be distributed. Considering the will in its entirety, the scheme of the testatrix is perfectly clear to our minds. If her son died before her leaving issue, she desired such issue to have all her property, and if he died before her without issue surviving, she desired her own relatives to have all the property, to the utter exclusion of any person or persons taking solely under the son. If he survived her, she desired him to have all her personal property as his own, and a life estate only in her realty, with remainder to any of his children who survived him, but if, surviving her, he died without issue surviving him, she desired the real property to go to her next of kin, other than her son.

The case is one where "the context clearly indicates" (Civ. Code, sec. 1327) that the word "heirs" was not used in the strict technical sense as designating the person or persons who would have succeeded under our succession statutes to the estate of deceased had she died intestate, but was intended to designate only those who would have been her heirs at law but for her son, either at the time of her death or at the termination of the life estate by the death of the son.

Whether in view of the language of the will such heirs are to be determined as of the date of the death of the deceased or as of the date of the death of the life tenant is a matter of no great moment to the respondent, who was not entitled to any of the real property in dispute in either event, but we think it clear that the intention was that they should be determined as of the date of the termination of the life estate. Apparently those who appeared to claim the realty as against the respondent in the lower court would have been entitled to the great bulk of the realty in either event, all being "heirs" of the deceased but for the son and his issue both at the date of the death of deceased, and at the termination of the life estate. If the heirs are to be determined as of the date of the termination of the life estate, as we think is the proper construction of the will, such claimants constitute the whole of the heirs to whom such realty is given, and they are entitled to distribution thereof.

The decree of distribution and the order settling the accounts are reversed.

Olney, J., Shaw, J., Lawlor, J., Sloane, J., and Lennon, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on November 5, 1920:

THE COURT.—The petition for a rehearing is denied. In view, however, of the application for modification of the opinion filed herein by one Thomas McConnell, claiming to be an "heir" of deceased within the meaning of the will,

and in order that he and others similarly related may not be prejudiced by anything said in the opinion, the last paragraph of the opinion is hereby amended to read as follows:

"If the heirs are to be determined as of the date of the termination of the life estate, as we think is the proper construction of the will, in so far as the record before us shows such claimants constitute the whole of the heirs to whom such realty is given."

Angellotti, C. J., Shaw, J., Olney, J., Lawlor, J., and Lennon, J., concurred.

Wilbur, J., dissented from order denying rehearing.

Sloane, J., was absent.