Determination unanimously affirmed, with costs.

In the Matter of the Accounting of J. THEODORE CROSS, as Successor Trustee under the Will of JAMES SAYRE, Deceased. LANSING G. L. SAYRE, Appellant; ONEIDA NATIONAL BANK AND TRUST COMPANY OF UTICA et al., as Trustees under the Will of GEORGE S. SAYRE, Deceased, et al., Respondents.

Fourth Department, May 9, 1956.

*Thomas S. Kernan* for appellant.

*Arthur L. Evans* for Oneida National Bank and Trust Company of Utica and another, as trustees under the will of George S. Sayre, deceased, and another, respondents.

*LeGrand C. Tibbits* for Home for the Homeless in the City of Utica, respondent.

*J. Theodore Cross,* in person, and *George R. Savis* for J. Theodore Cross, as successor trustee under the will of James Sayre, deceased.

*Pirnie Pritchard* for Jane B. S. Bryant, individually and as executor of Amelia V. R. Sayre, deceased, and as executor of Leonora S. Platner, deceased, and another.

*O. Gregory Burns* for Jane B. S. Bryant and another, as executors of George S. Sayre, deceased.

VAUGHAN, J. This is a proceeding for the construction of the will of James Sayre, deceased. The serious question presented is whether the class of heirs of the testator, to whom the trust remainder is given upon certain contingencies, should be determined as of the testator's death or as of the time of distribution of the corpus. The Surrogate has adopted the former construction, and a nephew of the testator appeals to this court.

The testator's will, executed in 1905, provided as follows: "I give and devise all of my property, real and personal, unto my executors hereinafter named, in trust nevertheless, to wit: to receive the rents and income thereof, and to apply them to the use of my wife, Ida L. Sayre, during her life; and, at her decease, I give and devise said property, real and personal, absolutely unto my children then living, in equal shares; and the children of any predeceased child to take the share its parent would have received if living at my wife's decease. And in event that no such child, or its descendants, shall be living at the decease of my wife; then I give said real and personal property, absolutely to my sister, Anna L. Sayre, if she then be living at my wife's decease; or, if said Anna L. Sayre, be then deceased, I give said real and personal property unto my heirs at law and next of kin, according to the provisions of the Statutes of the State of New York relating thereto."

The testator died in 1919 without issue. His heirs at that time were four sisters (Anna, who died in 1927; Caroline, died 1931; Amelia, died 1935; and Leonora, died 1938), one brother (George, who died in 1938) and one nephew (the present appellant, who is the son of a brother who predeceased the testator). The testator's widow died in 1954. His heirs, determined as of that time, would be his nephew (the appellant) and one niece (the daughter of George). The present respondents are George Sayre's trustees and two charitable institutions named as remaindermen under his will.

We think that the following are the only two possible constructions of this will: (1) The heirs of the testator, to whom the ultimate remainder is granted, could be determined as of the

time of his death. Respondents urge this interpretation, under which appellant would receive only one sixth of the remainder. This may be said to be the usual construction, in the absence of an indication of contrary intent (*Matter of Bump,* 234 N. Y. 60; Restatement, Property, § 308); (2) The heirs of the testator could be determined as of the death of the life tenant, i.e., at the time fixed for distribution of the corpus. Under this construction, appellant would receive one half of the remainder. For reasons to be discussed, we believe that is the correct result.

*Salter* v. *Drowne* (205 N. Y. 204), one of the leading cases on this question, involves the following three dispositions: (1) to a sister (now deceased) for life, then to plaintiff for life, and (p. 209) " on her death then to pay and divide such principal * * * to the issue of my daughter [plaintiff] absolutely and if none then to my next of kin "; (2) to plaintiff for life, then to plaintiff's daughter (now deceased) in fee, and if not living " then to convey such house and lot in fee to her issue and if none then to my heirs at law "; (3) to plaintiff for life, and (p. 210) " on her death to pay such principal * * * to the issue of my daughter and if my daughter shall leave no issue then to my next of kin ". At testatrix' death, her daughter (plaintiff) was her only heir. Plaintiff released the life estates in her favor, seeking to accelerate the remainders, and taking the position that the " heirs at law " and " next of kin " of the testatrix should be determined as of the latter's death, so that plaintiff would take the remainders in fee. But it was held that the class of remaindermen should be determined in each case at plaintiff's death. Judge CHASE stated (*supra,* p. 212) that the words in question are often employed to signify " the persons that would succeed to her [testatrix'] real and personal property if she had lived until the time for the distribution of the trust funds respectively, and had died intestate a moment thereafter, viz., immediately after the death of her daughter, the plaintiff herein." Judge CHASE pointed out (p. 213) that the remainder to heirs and next of kin was " uncertain and contingent ", and that testatrix had impliedly excluded plaintiff and her issue from the class by creating prior estates in their favor.

In *Matter of Fishel* (167 Misc. 145, affd. 256 App. Div. 915, motion for leave to appeal denied 280 N. Y. 851) a trust was created for the widow for life, then for Mark for life, and " Upon his death after the death of my said wife to pay the principal thereof to the children of my said son, Mark, in equal shares, and in the event of his death without issue him surviving to pay the principal thereof to my next of kin." Mark died without issue. Surrogate FOLEY, holding that the testator's

next of kin should be determined as of Mark's death, distinguished cases in which "there was either a primary gift of a remainder to the next of kin of the testator or the language of the will indicated an intention on the part of the testator to distribute the property as though he had died intestate. The gift of the remainder to the next of kin in this estate is substitutional. The primary gift is to a class, the members of which are to be determined at the termination of the trust. It is only on the non-existence of the members of this class that the alternative gift to the next of kin is to take effect. The primary gift is clearly contingent. The secondary gift is likewise contingent. The testator has indicated an intention to postpone vesting until the termination of the trust." (167 Misc. 145, 146.)

The opinion in *Matter of Fishel* (*supra*) distinguishes between a direct and primary gift of the remainder to the heirs of the testator and a secondary and substitutional gift of the remainder to them. In the latter event, if the primary gift (for example, to issue) is contingent, then the substitutional remainder to heirs is likewise contingent, and the class of heirs entitled to take should be determined at the death of the life tenant or tenants, i.e., at the time of distribution of the principal. But even in the case of a primary gift to heirs, the class is sometimes determined as of the death of the life tenant and not of the testator. The disposition in *Matter of Wilson* (48 N. Y. S. 2d 835, mod. 269 App. Div. 665, affd. 294 N. Y. 903) was to a daughter for life, and if upon her death a stepdaughter should survive, then to her for life, and upon the death of both life tenants, "I direct that all my property * * * shall be distributed among my heirs at law and next of kin according to the laws of the State of New York, and I herewith give, devise and bequeath my estate accordingly." Under the circumstances disclosed by that record, it was held that the class of heirs should be determined as of the termination of the trust.

In the present case, there are sound reasons for determining the class of heirs of the testator, not at his death, but at the death of the life tenant. The will created three remainders. The first remainder was in fee " unto my children then living ". As the testator never had issue, that remainder was contingent, not vested, because the remaindermen were uncertain and not in existence (Real Property Law, § 40). The second remainder, to testator's sister Anna, was likewise contingent because it was subject to the condition that Anna survive the life tenant (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93), which she did not do. If both of those remainders should fail, the testator

granted the remainder " unto my heirs at law and next of kin, according to the provisions of the Statutes of the State of New York relating thereto." This ultimate remainder, dependent upon the failure of the first two, each of which was contingent, was itself contingent and substitutional. Until the death of Anna before the life tenant, it was uncertain whether the heirs would take at all. The remainder in their favor, being subject to a condition precedent, was contingent (*Delaney* v. *McCormack*, 88 N. Y. 174). Since the remainder to heirs was secondary, contingent, and substitutional, the class of remaindermen should be determined as of the death of the life tenant (*Matter of Fishel, supra*). That construction seems particularly appropriate where, as here, survivorship is a condition of the prior remainders. The initial remainder was " unto my children then living ". The second remainder was " to my sister, Anna L. Sayre, if she then be living at my wife's decease ". Probably the testator intended that, if both of those remainders failed for lack of survivorship, the property should go to his heirs determined as of the time of distribution. Since he required survivorship as a condition of the first two remainders, it is unlikely that he intended his "heirs at law and next of kin " to be determined as of his death, so that persons who predeceased the life tenant might nevertheless qualify as heirs. If that were done, the remainder would not vest in his heirs, but in their heirs or residuary legatees. Such residuary legatees (for example, the present respondents) need not be the heirs or relatives of the testator at all. Such a result, we believe, conflicts with the testator's clear intent to benefit his closest blood relatives.

The remainder to Anna is dependent upon her surviving the life tenant. It is apparent that the testator wanted her to take all if she survived, and nothing if she did not. Yet by respondents' construction, although the specific remainder to her failed when she predeceased the life tenant, still she could qualify for a share as an heir. Indeed, for all the testator knew when he drew his will, she could have been his only heir at his death, in which case she would have received a vested remainder in fee, free from the requirement of survivorship which the testator specifically imposed upon the gift to her. Such an incongruity is evidence that the testator did not intend his heirs to be determined at the time of his death (*Delaney* v. *McCormack*, 88 N. Y. 174, 183, *supra*; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93, 104, *supra*).

Respondents' position is that the class should be determined as of the death of the testator in 1919, though it was then

uncertain whether the heirs would ever take. But even by that view the remainder would not vest in interest until 1927, when Anna predeceased the life tenant, because until then the remainder to heirs was still subject to a condition precedent. And that remainder did not vest in possession and enjoyment until the death of the life tenant in 1954. By appellant's view, on the other hand, the remainder would continue contingent until the heirs were ascertained upon the death of the life tenant in 1954, and at the same time would vest in interest and possession. This is the simpler and more natural construction. It fits in with the general testamentary scheme, particularly the requirement of survivorship. It satisfies the testator's purpose to benefit his own heirs instead of their residuary legatees. And it breathes meaning into the clause creating the remainder to heirs, rather than treating it simply as a pointless direction that the law take its course.

Many of the cases which have reached this result have relied on the "divide and pay over" rule (see, e.g., *Delaney* v. *McCormack, supra; Matter of Newkirk,* 233 App. Div. 168). It is immaterial that that rule does not apply here, for its only effect is to make the ultimate remainder future and contingent, which is true of the remainder to heirs in this case for other, but equally persuasive, reasons.

Respondents rely on *Matter of White* (213 App. Div. 82) in which the ultimate remainder was as follows: "I give * * * to the same persons who would have been entitled thereto * * * under the laws of the State of New York had I died seized and possessed thereof and intestate." Of course, if the testator had died seized of the property and intestate, it would descend to his heirs, determined as of his death. He clearly expressed his desire that the law take its course. No such intention is to be found in the present case.

Respondents also cite *Matter of Bump* (234 N. Y. 60, *supra*). The disposition in that case was such that, if the heirs of the testator were determined as of the death of his widow (the life tenant), then his sister, to whom he had granted only a life estate, would have taken the remainder as an "heir". Such a result would have conflicted with the intention revealed by the specific grant of a life estate. In the present case, on the other hand, such reasoning would seem to argue somewhat for a contrary result, else the testator's sister Anna, the primary devise to whom failed for want of survivorship, might nevertheless qualify as an "heir". It follows that the trust remainder, both principal and income, should be distributed to the testator's heirs at law and next of kin determined as of the death of the life tenant in 1954.

The decree insofar as appealed from should be reversed and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion.

All concur except WHEELER and BASTOW, JJ., who dissent and vote to affirm upon the authority of *Matter of Bump* (234 N. Y. 60, *supra*) and *Matter of White* (213 App. Div. 82, *supra*).

Present — McCURN, P. J., VAUGHAN, KIMBALL, WHEELER and BASTOW, JJ.

Decree, insofar as appealed from, reversed on the law, and matter remitted to the Surrogate's Court to proceed in accordance with the opinion, with costs to all parties filing briefs payable out of the estate.