[Civ. No. 28038. First Dist., Div. Two. Dec. 22, 1971.]

WELLS FARGO BANK, Plaintiff, v.
TITLE INSURANCE & TRUST COMPANY, as Executor, etc., et al.,
Defendants and Respondents;
UNITED CALIFORNIA BANK, as Successor Trustee, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Gibson, Dunn & Crutcher and Theodore B. Olson for Defendants and Respondents.

Walker, Wright, Tyler & Ward, Don F. Tyler, Krystal & Paradise, Monroe B. Kulberg, Mitchell, Silberberg & Knupp and Michael Holtzman for Defendants and Appellants.

No appearance for Plaintiff.

**OPINION**

**KANE, J.** — By deed, dated April 11, 1903, Susanna H. Van Nuys ("Grantor"), in consideration of love and affection, conveyed to her daughter, Annis H. Van Nuys ("Life Tenant"), certain real property situated in the City and County of San Francisco. The habendum clause of the deed provides as follows:

"To have and to hold the said property unto the said party of the second part for and during the term of his [*sic*] natural life with remainder over *upon the termination of said life estate to the issue of her body in*

*equal shares. In the event of the death of said grantee without issue, then said remainder shall vest as follows, to wit:*

"(a) REMAINDER over to KATE VAN NUYS[1] [otherwise referred to herein as KATE VAN NUYS PAGE] and J. BENTON VAN NUYS[1] in equal shares, *if alive at the termination of said life estate;*

"(b) IF either die without issue then the whole to the survivor;

"(c) *If both die without issue then the remainder over to my heirs;*

"(d) IF both die leaving issue then the remainder over in equal shares per stirpes;

"(e) IF either die leaving issue then one-half to the survivor, and the other half to such issue in equal shares." (Italics added.)

Grantor died on May 1, 1923. Her mother and father predeceased her. At the time of her death her heirs at law were her three children (Annis, the Life Tenant, her daughter Kate and her son Benton, the remaindermen in the deed). At the time of her death, Grantor had one brother, James B. Lankershim ("James"), and no other brothers or sisters.

The three children of Grantor survived her. Benton died September 1, 1962, Kate died July 17, 1966, and Annis died August 22, 1966, all without issue.

James, who also survived her, died October 16, 1931. The sole surviving issue of James were John Lankershim, a son, and Doria C. Lankershim, a daughter. John Lankershim died September 1, 1947 without issue, leaving his spouse, Florence M. Lankershim (an appellant here), who died on June 9, 1968. Doria C. Lankershim died November 2, 1948, leaving no spouse or issue other than her adopted daughter Jacqueline F. Bonnardot (another appellant here), now living.

After Grantor's death, a partition action was brought by Life Tenant against the remaindermen Kate and Benton. The decree rendered in that procedure ordered that the real estate described in the deed be sold, the proceeds be paid to Wells Fargo Bank as trustee and the net income be paid to Life Tenant and the corpus of the trust upon the termination of the life estate be delivered or paid to the remaindermen who may be in existence at the time of the death of the Life Tenant.

The action at bar was brought by Wells Fargo Bank for declaratory relief to determine to whom the corpus of the trust is to be distributed.

---

[1]The above designated remaindermen will hereinafter be referred to as "Kate" and "Benton" respectively.

The trial court found that the heirs as set forth in the deed should be determined as of the death of the Grantor, pursuant to the laws of intestate succession in effect at that time. Accordingly, the court concluded that the heirs of the Grantor were her three children (Annis, Kate and Benton) and ordered distribution of the trust corpus to the estates of said three children in equal shares.

Appellants who represent the estates of Doria and Florence Lankershim agree with the trial court's conclusion that the heirs under the deed must be determined as of the date of Grantor's death, but argue that the Grantor's three children must be excluded from among her heirs by virtue of incongruity.

Jacqueline F. Bonnardot contends that the heirs of the Grantor must be determined as of the death of the Life Tenant, and that as the only heir surviving the Life Tenant, she alone is entitled to the corpus of the trust.

For the reasons which follow we agree with appellant Bonnardot's contention and reverse the judgment of the trial court.

The record indicates that the case was decided by the trial court upon stipulated facts. Under established law it is solely a judicial function to interpret a written instrument, unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, the appellate court is not bound by a construction of a document based solely upon the terms of the written instrument without aid of extrinsic evidence, where there is no conflict in the evidence. (*Estate of Russell* (1968) 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353]; *Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; 3 Witkin, Cal. Procedure (1954) Appeal, § 89, p. 2253.)

All parties concede that since the Life Tenant and the two remaindermen named in the deed died without leaving issue, habendum clause (c) becomes operative. It is this provision that must be interpreted in light of the fact that both the remaindermen and the Grantor's brother survived the Grantor but died before the Life Tenant.

Under the well established general rule, the word "heirs" is a technical term and is used to designate the persons who would by statute succeed to an estate in case of intestacy (*Estate of Newman* (1924) 68 Cal. App. 420, 424 [229 P. 898]). In the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, the class described as testator's heirs is to be ascertained at the death of the testator (*Estate of Liddle* (1958) 162 Cal.App.2d 7, 15 [328 P.2d 35]; *Estate of McKenzie* (1966) 246 Cal.App.2d 740, 744 [54 Cal.Rptr. 888]).

However, there are equally well established exceptions to the above rule where the time for ascertaining the testator's heirs has been postponed to the time of the death of the life tenant or the termination of an intervening estate.

These exceptions are summarized in *Estate of McKenzie, supra,* at pages 744-745, as follows:

(a) Where there is an expression of futurity in the description of the testator's heirs (*Estate of Layton* (1933) 217 Cal. 451, 454 [19 P.2d 793, 91 A.L.R. 480], reference to my *then* living heirs, etc.).

(b) The "sole heir" cases in which the life tenant is the sole heir, but the will devises the remainder to the testator's "heirs" (*Estate of Wilson* (1920) 184 Cal. 63 [193 P. 581]).

(c) Where there is a decree of distribution superseding the will which decree sets forth a later time for ascertaining the testator's heirs (*Estate of Easter* (1944) 24 Cal.2d 191 [148 P.2d 601]).

(d) Where the primary gift to the remaindermen is contingent and the gift to the "heirs" is a substituted one. In this type of case, as the *McKenzie* court points out, the class of heirs is determined upon termination of the trust because the question whether the testator's heirs would take at all having been postponed until the resolution of contingency, the question of the identity of the heirs has likewise been deemed to have been postponed by the testator. (See also: *In re Pelham's Will* (1970) 63 Misc.2d 377 [312 N.Y.S.2d 285, 288]; *In re Patterson's Estate* (1965) 45 Misc.2d 797 [257 N.Y.S.2d 742]; *In re Sayre's Will* (1956) 1 App.Div.2d 475 [151 N.Y.S.2d 506]; 3 Powell on Real Property, § 375.)

The rationale of exception (d) is threefold: First, where the remainder is clearly contingent upon survival by the beneficiary, his prior death forecloses the possibility of vesting; therefore, there is no remainder to pass upon his death (*In re Patterson's Estate, supra,* at p. 744). Second, by allowing such beneficiary to take as an heir regardless of his failure to survive might well end in an unacceptable result, namely that the remainder would not vest in the heirs of the grantor, but in the beneficiary's heirs or his residuary legatees who, in turn, need not be the heirs or relatives of the grantor at all (*In re Sayre's Will, supra,* pp. 510-511). Third, if the general rule is applied, an incongruous result would be reached by taking the property away from A because he died without issue and giving it back to him because of the same reason (Simes and Smith, Future Interests, § 275, p. 211).

We think the case at bench clearly falls within exception (d). The

primary gift to the issue of the Life Tenant and to the two remaindermen or their issue was patently contingent upon their surviving the Life Tenant. Consequently, under the cited authorities, the secondary, substitutional gift to the heirs should also be deemed contingent, calling for the determination of heirs at the death of the Life Tenant. (*In re Pelham's Will*; *In re Sayre's Will,* both *supra.*)

But in the instant case there are additional reasons to determine the Grantor's heirs at the later date. The testamentary dispositions of all the claimants here (except appellant Bonnardot) reveal that all of the residuary legatees under their respective wills are foundations, charitable institutions, hospitals, universities, etc. Applying the general rule in the present case would result in thwarting the expressed intention of the Grantor by distributing the corpus of the trust to persons or entities other than her heirs. Furthermore, the application of the general rule here would cause the salient incongruity envisaged by Simes by taking the corpus from the remaindermen because they died without issue and then giving it back to them for the very same reason.

Next, we examine the arguments advanced by the appellants for the estates of Florence and Doria Lankershim. They contend that the heirs of the Grantor should be determined as of the date of Grantor's death, but that Grantor's three children must be excluded from the class by reason of incongruity. Their argument. if accepted, would mean that Grantor's only heir was her brother James B. Lankershim, and since James' sole surviving issue were John, a son, and Doria, a daughter, the corpus should be distributed to their estates in equal shares.

This argument, however, is not supported by authority or by the facts of the present case.

The cases upon which these appellants rely (*Estate of Wilson, Estate of McKenzie,* both *supra; Kimberly* v. *New Haven Bank N.B.A.* (1956) 144 Conn. 107 [127 A.2d 817]; *Daniel* v. *Donohue* (1959) 215 Ore. 373 [333 P.2d 1109]) are either distinguishable from the case at bar or do not endorse the proposition which Florence and Doria urge us to accept.

In *Kimberly* v. *New Haven Bank N.B.A., supra,* both excluded grandchildren were life tenants, thereby placing it within the purview of the sole heir cases; *Daniel* v. *Donohue,* and *Estate of Wilson,* both *supra,* were outspoken sole heir cases. Additionally, in *Wilson* the court held that the heirs of the grantor must be determined as of the death of the life tenant son. *Estate of McKenzie* is of no avail to appellants, either. In that case the court rejected the exclusion theory and applied the general rule to resolve the heirs without exclusion.

Appellant's exclusion theory also lacks factual support in the instant case. As has been pointed out, appellant Bonnardot is the only living heir and blood relative of the Grantor,[2] the other residuary legatees being all strangers. The deed was given in consideration of love and affection. ▮ These facts taken together underline the application of the well established rule of construction which states that where a will is capable of two interpretations, under one of which the blood of the testator will take, and under the other the property will go to strangers, the interpretation by which the blood of the testator takes is preferred (*Estate of Boyd* (1938) 24 Cal.App.2d 287 [74 P.2d 1049]; 4 Witkin, Summary of Cal. Law (1960) Wills and Probate, § 120).

Finally, it should be pointed out that none of the cases cited by respondents negate the result reached in this decision. Their main cases, such as *Estate of Liddle, Estate of Newman* and *Estate of McKenzie,* all *supra,* deal with vested remainders subject to subsequent divestment rather than contingent remainders conditioned upon survival. Therefore, while respondents' cases uphold the general proposition, they do not contradict the applicability of a rule of exception to a case, like the instant one, which involves a contingent remainder.

In view of the conclusion reached above, it is unnecessary to decide whether the same result would have been compelled by reason of the provisions in the partition decree as well.

The judgment is reversed with directions to amend the findings of fact and conclusions of law in accordance with the views expressed in this opinion and to enter a new judgment consistent therewith.

Taylor, P. J., and Rouse, J., concurred.

---

[2]Under Probate Code section 257 an adopted child is the same as a natural child for purposes of determining succession.