[No. F018760. Fifth Dist. Sept. 10, 1993.]

Estate of HAROLD EVANS WOODWORTH, Deceased.
WELLS FARGO BANK, N.A., as Trustee, etc., Petitioner and
Respondent, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Claimant and
Appellant;
JAMES V. WOODWORTH et al., Claimants and Respondents.

COUNSEL

James E. Holst and Mary E. MacDonald for Claimant and Appellant.

Bunker, Saghatelian & Gibbs and Bruce F. Bunker for Claimants and Respondents.

No appearance for Petitioner and Respondent.

OPINION

**DIBIASO, Acting P. J.**—The Regents of the University of California (Regents) appeal from an order of the probate court which rejected their claim to the remainder of a testamentary trust. We will reverse. We will

apply the common law preference for early vesting and hold that, absent evidence of the testator's intent to the contrary, the identity of "heirs" entitled to trust assets must be determined at the date of death of the named ancestor who predeceased the life tenant, not at the date of death of the life tenant.

## STATEMENT OF CASE AND FACTS

Harold Evans Woodworth died testate in 1971. His will was thereafter admitted to probate; in 1974 a decree of distribution was entered. ██ ██ According to this decree,[1] a portion of the estate was distributed outright to the testator's surviving spouse, Mamie Barlow Woodworth. The balance of the estate was distributed to Mamie Barlow Woodworth and the Bank of America, to be held, administered and distributed in accord with the terms of a testamentary trust established by the will of Harold Evans Woodworth. The life tenant of the trust was Mamie Barlow Woodworth. Among the trust provisions was the following: "This trust shall terminate upon the death of MAMIE BARLOW WOODWORTH. Upon the termination of this trust, my trustee shall pay, deliver and convey all of the trust estate then remaining, including all accrued and/or undistributed income thereunto appertaining, to MRS. RAY B. PLASS, also known as Elizabeth Woodworth Plass, [Elizabeth Plass] whose present address is 90 Woodland Way, Piedmont, California, if she then survives, and if not then to her heirs at law."

Elizabeth Plass was the testator's sister; he also had two brothers who predeceased him. One died without issue. The other was survived by two children, Elizabeth Woodworth Holden, a natural daughter, and James V. Woodworth, an adopted son.

Elizabeth Plass died in 1980; she was survived by her husband, Raymond Plass. Raymond Plass died testate in 1988. In relevant part, he left the residue of his estate to the Regents for use on the university's Berkeley campus.

Mamie Woodworth, the life tenant, died in 1991. Thereafter, Wells Fargo Bank, as successor trustee of the Woodworth trust, petitioned the probate court pursuant to Probate Code section 17200 to determine those persons entitled to distribution of the trust estate. The petition alleged that "The petitioner [was] uncertain as to whether Elizabeth Plass's 'heirs at law'

---

[1]The decedent's will was not introduced in the probate court proceedings. A decree of distribution is a conclusive determination of the terms of a testamentary trust and the rights of all parties claiming any interest under it. (*Estate of Easter* (1944) 24 Cal.2d 191, 194 [148 P.2d 601].)

under [the decree] should be determined as of February 14, 1980, the date of her death, or August 13, 1991, the date of Mamie [Barlow] Woodworth's death."

It is undisputed that (1) as of February 14, 1980, Elizabeth Plass's heirs at law were her husband, Raymond Plass; her niece, Elizabeth Woodworth Holden; and her nephew, James V. Woodworth; and (2) as of August 13, 1991, Elizabeth Plass's heirs at law were Elizabeth Woodworth Holden and James V. Woodworth (the Woodworth heirs).

At the hearing in the probate court, the Woodworth heirs offered extrinsic evidence, in the form of their own declarations, concerning the purported intent of the testator. However, relying only on the language of the decree of distribution,[2] the probate court concluded that the identity of the heirs entitled to the trust assets must be determined as of the date of death of the life tenant. The probate court therefore ordered the trustee to deliver the remaining trust assets in equal shares to the Woodworth heirs.

## DISCUSSION

### 1. *Standard of Review.*

■ The decree of distribution constitutes a final and conclusive adjudication of the testamentary disposition which the deceased made of his property. (*Estate of Miner* (1963) 214 Cal.App.2d 533, 538 [29 Cal.Rptr. 601].) Thus, the outcome of this appeal turns on the proper construction to be given to the provision in the decree which directs the distribution of the trust assets upon termination. (*Estate of Easter, supra,* 24 Cal.2d 191, 194-195.) Because the probate court's ruling was based entirely upon the language of the decree, we are not bound by the probate court's conclusion. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].) Instead, we must make an independent determination of the meaning of the decree. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) In addition, since the probate court did not rely upon any purported evidence of intent, any reference we may make to the "record" in this case will not include such evidence; we review the propriety of the probate court order as if the extrinsic evidence did not exist.

### 2. *Issues.*

■ The Regents contend the probate court erroneously failed to apply the general rule of construction which requires that the identity of "heirs"

---

[2]There is nothing in the record before us which suggests the trial court's ruling was founded, in whole or part, upon any extrinsic evidence.

entitled to take a remainder interest be determined as of the date of death of the denominated ancestor, in the absence of any contrary intent expressed by the testator. (See *Estate of Stanford* (1957) 49 Cal.2d 120, 124 [315 P.2d 681]; *Estate of Liddle* (1958) 162 Cal.App.2d 7 [328 P.2d 35]; and *Estate of Newman* (1924) 68 Cal.App. 420, 424 [229 P. 898].) Had the probate court construed the decree in accord with this principle, the Regents would have been entitled to share in the trust assets as a residuary legatee of Raymond Plass, an heir at law of Elizabeth Plass at the time of her death in 1980.

The Woodworth heirs respond by asserting the probate court's decision is consistent with an exception to the general rule which requires that the determination be made at the date of death of the life tenant. (See *Wells Fargo Bank* v. *Title Ins. & Trust Co.* (1971) 22 Cal.App.3d 295, 300 [99 Cal.Rptr. 464]; and *Estate of McKenzie* (1966) 246 Cal.App.2d 740 [54 Cal.Rptr. 888].) ▇▇▇▇▇ Under this principle, the Regents have no interest in the trust assets, because Raymond Plass predeceased Mamie Barlow Woodworth.[3]

### 3. *The Early Vesting Rule.*

*Estate of Liddle, supra,* 162 Cal.App.2d 7, reflects the common law preference for vested rather than contingent remainders.[4] Thus, unless a particular instrument disclosed a different intent on the part of the testator, a remainder to a class of persons, such as children, became vested in the class when one or more of its members came into existence and could be ascertained, even though the class was subject to open for future additional members. (*Estate of Stanford, supra,* 49 Cal.2d at p. 125.) Furthermore, the fact that takers of a postponed gift were described by a class designation did not, under the common law rule, give rise to any implied condition of survival. (*Id.* at p. 126.)

The circumstances involved in *Liddle* are substantially indistinguishable from those of the present case. In *Liddle,* the remainder of a testamentary

---

[3]It is undisputed that had the testator in this case died on or after January 1, 1985, the Regents would have no claim to the trust assets. Under Probate Code sections 6150 and 6151, which have been in effect since 1985 (see Prob. Code, § 6103), a devise of a future interest to a class, such as heirs, includes only those who fit the class description at the time the legacy is to take effect in enjoyment.

[4]The bias for early vesting was also evident in several now repealed provisions of the Probate Code. For example, former section 28 provided: "Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testators's death."

Former section 123 read in part: "A testamentary disposition to a class includes every person answering the description at the testator's death; but when the possession is postponed to a future period, it includes also all persons coming within the description before the time to which possession is postponed."

trust was to be distributed to the testatrix's attorney or, in the event of his death, the attorney's heirs at law. Although the attorney survived the testatrix, he predeceased the life tenant. The attorney's only heir, his wife, died intestate several years before the death of the life tenant. (*Liddle, supra,* 162 Cal.App.2d at pp. 9-10.) The wife's heirs and the administrator of her estate clashed with certain remote cousins of the attorney over the ownership of the trust assets.

The appellate court ruled in favor of the wife's estate. (162 Cal.App.2d at pp. 20-21.) Relying upon statutes, treatises, and case law expressing common law notions, including *Estate of Stanford, supra,* 49 Cal.2d 120, the court construed the phrase "heirs at law" according to its technical meaning, that is, the person or persons who are entitled to succeed to the property of an intestate decedent. (*Liddle, supra,* 162 Cal.App.2d at pp. 14-15.) The *Liddle* court then held the members of this class must be determined as of the death of the named ancestor. The rule was summarized as follows: " 'Normally, when a gift has been made to the "heirs" or "next of kin" of a named individual, the donor has said in effect that he wants the property distributed as the law would distribute it if the named person died intestate. Accordingly, the normal time for applying the statute of descent or distribution is at the death of the named individual. This is, however, merely a rule of construction, and if the testator or grantor manifests an intention that the statute be applied either at an earlier or a later time, such intention will be given effect.' " (*Liddle, supra,* 162 Cal.App.2d at p. 19.)

The designated ancestor in *Liddle* was the attorney. Because his wife was his intestate heir at the time he died, the court found she was the proper recipient of the trust estate.

4. *The Contingent Substitutional Gift Exception.*

On the other hand, *Wells Fargo Bank, supra,* 22 Cal.App.3d 295, 300, reflects the application of an exception to the early vesting principle. In *Wells Fargo Bank,* a woman had conveyed, by a grant deed, a life estate in certain real property to her daughter, with remainders to the grantor's two other children. If the life tenant died without issue and the two other children died without issue before the grantor's death, the instrument provided that the remainder interest in the property would belong to the grantor's "heirs." (*Wells Fargo Bank, supra,* 22 Cal.App.3d 295, 297-298.) The trial court determined the heirs should be ascertained as of the date of the grantor's death.

The Court of Appeal reversed. Because the remainder to the other children or their issue was contingent upon their surviving the life tenant, the court

held the substitutional gift to the heirs was also contingent, thereby requiring the identification of the class members as of the death of the life tenant: "In this type of case . . . the class of heirs is determined upon termination of the trust because the question whether the testator's heirs would take at all having been postponed until the resolution of contingency, the question of the identity of the heirs has likewise been deemed to have been postponed by the testator. [Citations.]" (*Wells Fargo Bank, supra*, 22 Cal.App.3d 295, 300.)

This concept was also recognized in *Estate of McKenzie, supra*, 246 Cal.App.2d 740, a case cited in *Wells Fargo Bank*: "There is another class of cases in which the word 'heirs' has been held to refer to persons other than those who were heirs at the time of the testator's death. . . . In this type of case, the class of heirs is determined upon termination of the trust, because the gift to heirs was a substituted one, the primary gift being contingent. (Simes & Smith, The Law of Future Interests (2d ed.) § 735, p. 210.) The question whether the testator's heirs would take at all having been postponed until the resolution of the contingency, the question of the identity of the heirs in such cases has likewise been deemed to have been postponed by the testator. (See *In Re Sayre's Will* [1956] 1 App.Div.2d 475 [151 N.Y.S.2d 506, 509-512].)" (*Estate of McKenzie*, at p. 745.) The *McKenzie* court did not apply this exception, however, because the trust language before it did not create a contingent, substitutional gift. (*Estate of McKenzie, supra*, 246 Cal.App.2d at p. 745.)

The *Liddle* court also considered but rejected the exception: " 'The fact that the gift to the described group is substitutional does not cause the postponement of the application of the statute to a period subsequent to the death of the designated ancestor.' " (*Liddle, supra*, 162 Cal.App.2d at p. 19.)

The court reasoned: "[i]f it were held at bar that [the attorney's wife] took a contingent estate at the death of [the testatrix], that fact did not alter the further one that the contingency was fulfilled when she survived her husband, and what was previously a contingent remainder (if it was one) became vested in her as his sole heir at law." (*Liddle, supra*, 162 Cal.App.2d at p. 17.)

5. *Application.*

The will of Harold Evans Woodworth created a contingent remainder in Elizabeth Plass, with a substitutional gift to her heirs at law. Although it

appears we are therefore free to choose between *Liddle* and *Wells Fargo Bank*, in reality this is not so; the contingent, substitutional gift exception to the rule of early vesting applies only to grants of remainder interests which differ materially from the one now before us.

An authority relied upon in *McKenzie*, and by implication in *Wells Fargo Bank*, for the exception is Simes & Smith, The Law of Future Interests (2d ed.) § 735, page 210. (*Estate of McKenzie, supra,* 246 Cal.App.2d at p. 745.) However, under consideration at the cited portion of this treatise is the situation where "a testator devises a life estate or defeasible fee to *a person who is one of his heirs,* followed by a remainder or executory interest to the testator's heirs." (Simes & Smith, *supra,* § 735, p. 206, italics added.) As Simes and Smith point out, in such circumstances, some courts have rejected the general rule that the members of the class are to be determined at the death of the ancestor (i.e., the testator), and instead have applied an exception which identifies the heirs who will take the remainder as those in being upon the death of the holder of the life estate or defeasible fee. (*Id.,* at pp. 206-210.) The rationale for these decisions is an assumption the testator did not intend to give both a present and a future interest to the same person. (See Simes & Smith, *supra,* § 735, at pp. 206-210.)

*Wells Fargo Bank* involved a bequest of the same type as that which is the subject of section 735 of the Simes and Smith treatise. In *Wells Fargo Bank,* the estate of the life tenant would have been entitled to receive a portion of the remainder if the identity of the grantor's heirs was determined at the time of the grantor's death rather than at the date of the life tenant's death. (*Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 298.) The *Wells Fargo Bank* court essentially adopted the analysis in section 735 of Simes and Smith that: "[I]f the general rule is applied, an incongruous result would be reached by taking the property away from [the holder of the possessory interest] because he died without issue and giving it back to him because of the same reason." (*Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 300.)

The *Wells Fargo Bank* court relied on three New York appellate decisions: *In re Pelham's Will* (1970) 63 Misc.2d 377 [312 N.Y.S.2d 285]; *In re Patterson's Estate* (1965) 45 Misc.2d 797 [257 N.Y.S.2d 742]; and *In re Sayre's Will* (1956) 1 A.D.2d 475 [151 N.Y.S.2d 506].[5] In each of these cases, there existed at least the possibility that the estate of an interim beneficiary who did not survive the termination of a preceding interest, and therefore did not or would not receive an outright interest in the testator's property, would nonetheless be entitled to share in the remainder. In *In re*

---

[5]This opinion was also cited in *Estate of McKenzie, supra,* 246 Cal.App.2d at page 745, as additional authority for the existence of the exception.

*Pelham's Will, supra,* 312 N.Y.S.2d at page 288, the two heirs determined at the testator's death were "the same persons who would take as intestate distributees had the testator made no alternative gift of the remainder." In *In re Patterson's Estate, supra,* 257 N.Y.S.2d at page 745, identifying the testator's heirs at his death could have "result[ed] in a distribution of trust remainders through the estates of the same persons who were the income beneficiaries and contingent remaindermen of the trusts." In *In re Sayre's Will, supra,* 151 N.Y.S.2d at page 511, ". . . although the specific remainder to [an interim beneficiary] failed when she predeceased the life tenant, still she could qualify for a share as an heir."

By contrast, in the instant case we do not have a contingent, substituted gift to a class of recipients which includes the deceased interim beneficiary. As in *Liddle,* the class of contingent, substituted heirs does not encompass any prior contingent interim beneficiary. The named remainderman, Elizabeth Plass, did not lose her interest because she died without issue. She lost her interest because she died before the death of the life tenant. According to the record, neither Mamie Barlow Woodworth nor—of course—Elizabeth Plass is an heir at law of Elizabeth Plass.

Thus, we believe the exception to the general rule of early vesting, as implemented in *Wells Fargo Bank,* should not be applied to the remainder interest contained in the decree of distribution here.

### 6. *Other Considerations.*

For the reasons which follow, we find no other justification for departing from *Liddle.* First, there is nothing in the language of the other provisions of the decree of distribution before us which reveals the testator's intent or desire. Since the record does not include Harold Evans Woodworth's will, we cannot resort to it to attempt to divine his wishes. (See *Estate of Stanford, supra,* 49 Cal.2d at pp. 130-134.)

Second, the fact that the university, an entity, is not a relative of Elizabeth Plass or one of her heirs at law is not material. (See *Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 301.) Unlike the *Wells Fargo Bank* court, we are unwilling to say that application of the general rule "would result in thwarting the expressed intention of the Grantor by distributing the corpus of the trust to persons or entities other than [Elizabeth Plass's] heirs." (*Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 301.) Had the instrument in *Wells Fargo Bank* satisfactorily disclosed the grantor's intentions regarding the distribution of the remainder interest in the property, there would have been no need for the court to have even considered the competing rules of construction in order to decide the case. (See *Estate of Stanford, supra,* 49 Cal.2d at p. 127.)

It would be pure speculation for us to conclude that Harold Evans Woodworth would not have wanted Raymond Plass to inherit a portion of the trust assets. It appears from the record that Raymond Plass and Elizabeth Plass were married at the time the testator executed his will. It has long been the law in California that a husband is an heir of his deceased wife. (*Estate of Liddle, supra,* 162 Cal.App.2d at p. 16.) Nothing in the decree forecloses the possibility the testator took into account the fact that Elizabeth Plass might predecease, and Raymond Plass might outlive, Mamie Barlow Woodworth, resulting in Raymond Plass's succession to a portion of the trust remainder.

Third, the rule of construction which favors descent according to blood in cases of ambiguity in testamentary dispositions (see *Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 302; *Estate of Boyd* (1938) 24 Cal.App.2d 287, 289 [74 P.2d 1049]) should likewise not determine the result in this case. The general rule favoring early vesting was well established long before the testator died. We do not think it should be abandoned in order to carry out some purportedly perceived, but entirely speculative, notion about the intent of the testator based upon events which occurred well after the testator's death. (See *Estate of McKenzie, supra,* 246 Cal.App.2d at p. 748.) As we noted earlier, it is perfectly conceivable that Harold Evans Woodworth took into account in making his will the possibility that his property would pass to Raymond Plass and thereafter be transferred to strangers to the Woodworth line.

In this connection, the *Wells Fargo Bank* court in part rationalized its decision with the observation that: " . . . allowing such beneficiary to take as an heir regardless of his failure to survive might well end in an unacceptable result, namely that the remainder would not vest in the heirs of the grantor, but in the beneficiary's heirs or his residuary legatees who, in turn, need not be the heirs or relatives of the grantor at all (*In re Sayre's Will, supra,* [151 N.Y.S.2d at] pp. 510-511)." (*Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 300.)

Such an outcome is unacceptable, however, only if it is contrary to the testator's clear intent. ▆▆ ▆▆ In the absence of any firm indication of testamentary intent, the rules of construction must be implemented in order to ensure uniformity and predictability in the law, rather than disregarded in order to carry out a court's ad hoc sense of what is, with perfect hindsight, acceptable in a particular set of circumstances. (See *Estate of McKenzie, supra,* 246 Cal.App.2d at pp. 748-749.)

Probate Code former section 122 (repealed 1985), relied upon by the Woodworth heirs as an additional reason to uphold the probate court order,

is not relevant. The section read: "Words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession."

The crucial question in this case is whether the decree's language imposes a survivorship condition to membership in the class of Elizabeth Plass's heirs. Since we have determined it does not, former section 122 has no effect. In substance, the Woodworth heirs argue that because possession of the remainder of the trust assets in this case was postponed, the statute requires that a condition of survivorship be imposed upon the recipients of the remainder. This is an unwarranted reading of the section, and one which turns its language upside down.

Last, none of the other exceptions identified in *Wells Fargo Bank* to the early vesting rule applies under the circumstances of this case. This is not a situation where the ". . . life tenant is the sole heir, but the will devises the remainder to the testator's 'heirs.'" (*Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 300; *Estate of Wilson* (1920) 184 Cal. 63 [193 P. 581].)

In addition, the language of the decree does not contain any "expression of futurity in the description of the ancestor's heirs" (*Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 300), such as "my then living heirs-at-law" (*Estate of Layton* (1933) 217 Cal. 451, 454 [19 P.2d 793, 91 A.L.R. 480]; see also *Estate of McKenzie, supra,* 246 Cal.App.2d at p. 744). When, as here, "'the gift is in terms "then to the heirs" of a designated person, the word "then" merely indicates the time of enjoyment and has no significance in relation to the rule [of early vesting].'" (*Estate of Miner, supra,* 214 Cal.App.2d at p. 542.) The use of the word "then" in the instant decree did nothing more than create a contingent remainder in Elizabeth Plass. Whatever reliance the trial court placed upon the term was therefore erroneous.[6]

Further, the rule in *Estate of Easter, supra,* 24 Cal.2d 191, does not apply because the decree in the present case does not use the word "vest." In *Easter,* the California Supreme Court considered a decree of distribution which provided: "'Upon the death of the [life tenant/widow of the testator] the trust . . . shall terminate and all of the property . . . *shall go to and vest in* the heirs at law of the [testator].'" (*Id.,* at p. 195, italics in original.) Certain claimants argued the remainder was determinable at the time of the

---

[6]The trial court's written decision included the following statement: "It was the intent of the decedent in using the word 'then' in relation to the disposition to Elizabeth Woodworth Plass that the determination of the identity of the heirs be made as of the time of the death of the life tenant and the termination of the trust."

testator's death, in the absence of a clearly expressed contrary intent. The Supreme Court disagreed, finding no uncertainty in the decree. By providing that two things should occur upon the death of the life tenant, i.e., (1) the trust shall terminate and (2) the property shall go to and vest in the testator's heirs at law, the decree clearly indicated an intent that the interests of the heirs should vest at the time of the termination of the trust. "Any other construction would ignore the normal and usual meaning of the words 'shall go to and vest in the heirs at law.' " (*Estate of Easter, supra,* 24 Cal.2d at p. 195.) Later, in *Estate of Stanford, supra,* 49 Cal.2d at page 130, the Supreme Court made it clear that the rule of early vesting was not applied in *Easter* because of the presence in the decree of the technical word "vest." (See also *McKenzie, supra,* 246 Cal.App.2d at p. 745; and *Wells Fargo Bank, supra,* 22 Cal.App.3d at p. 300.)

Finally, and contrary to the contention of the Woodworth heirs, we do not find the words "pay to" contained in the instant decree to be equivalent to the word "vest" or otherwise constitute an "expression of futurity" for purposes of determining the identity of the relevant heirs. (*Wells Fargo Bank, supra,* at p. 300.) Rather, the instruction pertains to the time when the recipients of the assets are entitled to have them. (*Estate of Miner, supra,* 214 Cal.App.2d at p. 542.)

### DISPOSITION

Accordingly, we must reverse the probate court's ruling that the Regents have no claim to the assets of the testamentary trust. Because the trial court did not consider the extrinsic evidence presented by the parties, we take no position with respect to it or its effect. It may be evaluated by the probate court on remand.

The judgment (order) appealed from is reversed.

Thaxter, J., and Brown (G. A.), J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.