[Civ. No. 21367. First Dist., Div. Two. Dec. 17, 1963.]

Estate of WILLIAM J. ZAPPETTINI, Deceased. THELMA D. ZAPPETTINI, Claimant and Appellant, v. NORMA FERROGGIARO et al., Petitioners and Appellants.

Edward K. Allison for Claimant and Appellant.

John A. Sullivan, DiMaria, Daschbach & Donovan, DiMaria, Daschbach, Donovan & Moses and William J. Moses for Petitioners and Appellants.

SHOEMAKER, P. J.—Thelma D. Zappettini, the widow of the decedent, and Norma Ferroggiaro and Hazel Suacci, the sisters of the decedent, have filed cross-appeals from a decree determining heirship.

The decedent, William J. Zappettini, died on May 2, 1961, leaving as his sole heirs-at-law his widow, Thelma D. Zappettini, and his two sisters, Norma Ferroggiaro and Hazel Suacci. On May 23, 1961, his will, dated June 13, 1958, was admitted to probate. Pursuant to the fourth paragraph of the will, the testator gave, devised and bequeathed one-half of his entire estate to his wife, subject only to the condition that she survive him for six months and the other one-half in equal shares to his two sisters. In the seventh paragraph of the will, the testator stated that the bulk of his estate consisted of the land, buildings and business assets known as the Mar Vista Riding Academy; that his wife was thoroughly conversant with the operation of this business, was competent to manage the same, and might desire to retain the business after his death as her means of livelihood; that "[i]n order to facilitate this," his wife should have the right to elect, within six months of his death, to have said business distributed to her as her one-half of the estate; that in the event that she did so elect and that the estate, exclusive of such business, was not sufficient in value to pay the other legatees the one-half of the estate left to them, his wife should then take the business, land, buildings and equipment in fee, but should give to the other devisees and legatees her personal note or notes secured by a deed or deeds of trust on the real property on which the business was situated, for the payment of "their share of my estate as hereinbefore devised and

bequeathed to them''; that in the event such notes were given, they should be installment notes in such installment amounts as could reasonably be met by his wife; that his wife should have the ''privilege'' of paying off the balance of said notes at any time that she was able. The fifth paragraph of the will provided as follows: ''I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this Will or not mentioned herein, shall contest this Will or object to any of the provisions hereof, I give to succ [sic] person so contesting or objecting, the sum of ONE DOLLAR ($1.00) and no more, in lieu of the provision which I have made or which I might have made herein for such person so contesting or objecting.''

On October 20, 1961, Thelma D. Zappettini (who will henceforth be designated ''the widow'') filed a notice electing to take the riding academy as her share of the estate under the decedent's will. On May 31, 1962, Norma Ferroggiaro and Hazel Suacci (who will henceforth be designated ''the sisters'') filed a petition for determination of heirship. The sisters therein alleged that the decedent, pursuant to the fourth paragraph of his will, had devised and bequeathed his entire estate one-half to his wife, and one-half in equal shares to his sisters; that the provisions of the seventh paragraph of the will were ''uncertain and inconsistent in their purport and tenor'' with the provisions of the fourth paragraph; that the provisions of the seventh paragraph were ''not binding,'' ''not valid and of no force or effect whatsoever.'' The sisters prayed that the court determine and declare the rights of all persons in the estate and the amount of each distributee's interest.

On June 11, 1962, the widow filed a statement setting forth her interest in the estate. She therein alleged that the seventh paragraph of the will was ''valid, unambiguous and enforceable in accordance with its terms''; that she had duly elected to exercise her rights thereunder and was accordingly entitled to have the assets comprising the riding academy distributed to her subject to the other terms and conditions specified in the seventh paragraph of the will. She further alleged that the action of the sisters in filing their petition for determination of heirship constituted a ''contest'' or an ''objection'' to the provisions of the will within the meaning of the fifth paragraph of the will.

The court found that the actions of the sisters did not

constitute a contest of the will or an objection to its provisions within the meaning of the fifth paragraph of the will. The court further found that the seventh paragraph of the will was valid and that the widow had duly elected to exercise her rights thereunder. The court accordingly ordered that the assets comprising the riding academy should be distributed to the widow and that all other assets in the estate should be distributed in equal shares to the sisters; that immediately upon distribution of the assets comprising the riding academy, the widow should execute and deliver to each of the sisters a promissory note in a principal amount equal to one-quarter of the difference between the adjusted value of the assets comprising the riding academy and the other assets in the estate; that each of said notes should be secured by a deed of trust on the real property upon which the academy was located; that the principal amount of the notes should be payable in installments which the court should determine to be reasonable in view of the widow's ability to pay; that said notes should bear no interest other than 7 per cent per annum on any installment which was not paid on the due date; that the widow should have the right to prepay all or any part of the unpaid principal amount at any time or times; that the unpaid principal amount should become due and payable in the event the widow sold the riding academy.

The widow appeals from that portion of the decree determining heirship which held that the sisters had not violated the fifth paragraph of the will. The sisters appeal from that portion of the decree setting forth the terms of payment and the rate and amount of interest to be paid upon the promissory notes.

We deal first with the widow's appeal. ▮ It is settled that no-contest clauses are valid and enforceable in California (*Estate of Hite* (1909) 155 Cal. 436, 440-441 [101 P. 443, 17 Ann. Cas. 993, 21 L.R.A. N.S. 953] ; *Estate of Howard* (1945) 68 Cal.App.2d 9, 11 [155 P.2d 841] ; *Estate of Mathie* (1944) 64 Cal.App.2d 767, 776 [149 P.2d 485] ; *Estate of Markham* (1941) 46 Cal.App.2d 307, 314 [115 P.2d 866] ) ; that they should be strictly construed (*Lobb* v. *Brown* (1929) 208 Cal. 476 [281 P. 1010] ; *Estate of Fuller* (1956) 143 Cal.App.2d 820, 824 [300 P.2d 342] ).

▮ However, it has also been determined that when the action of the legatee is merely one to determine the true construction of the will, or any of its parts, the action cannot be held to breach the ordinary forfeiture, or no-contest,

clause. (*Estate of Kline* (1934) 138 Cal.App. 514, 523 [32 P.2d 677]; *Estate of Briggs* (1956) 139 Cal.App.2d 802, 807 [294 P.2d 478].)

The widow contends that *Estate of Lynn* (1952) 109 Cal. App.2d 468 [240 P.2d 1001], wherein a similar no-contest clause was placed in the will, is controlling of the instant appeal. We do not agree. The discussion of the no-contest clause in *Lynn* is dicta. The problem before the appellate court was completely disposed of on proper grounds as presented by the facts of the case. The appellate court assumed a state of facts as to the lack of opposition by the nonpetitioning legatees and based thereon proceeded to express itself with regard to the effect of the no-contest clause, which was neither warranted nor required under the record before it.

The sisters' position, on the other hand, is that their petition for determination of heirship was in actuality nothing more than a request that the trial court construe the will and resolve certain inconsistencies between the fourth and seventh paragraphs thereof. The cases they rely upon are *Estate of Kline, supra,* and *Estate of Briggs, supra* (see also 15 Hastings L.J. 73, note 119). We agree that this position is sound and supported both by law and the findings of the trial court.

An examination of the sisters' petition for heirship reveals that they did seek a judicial construction of the will and a declaration of the amount of each distributee's interest. They also alleged, however, that the seventh paragraph of the will was "not binding," "not valid and of no force or effect whatsoever." In view of this language, it might appear at first blush that the rule of the *Kline* case would be inapplicable for the reason that the sisters had done more than merely seek a judicial construction of the will and had attempted to invalidate one of its parts. However, in *Estate of Harrison* (1937) 22 Cal.App.2d 28 [70 P.2d 522], one of the beneficiaries under the will filed an answer and objections to the executor's petition for distribution and therein alleged that certain trust provisions of the will were void as an illegal suspension of the power of alienation (p. 32). Although the will contained a broad *in terrorem* clause applicable to any person who should " 'directly or indirectly seek to ... impair or invalidate any of the provisions' " of the will (p. 33), the court nevertheless held that the beneficiary had merely sought an interpretation of the trust provisions of the will and that, under the rule of the *Kline* case, he had not violated the disinheriting clause (p. 41).

In the face of the express holding of the *Harrison* case, we believe that any conflicting language in the *Lynn* case is properly disregarded. Moreover, the trial court was in a far better position to determine the true object of the sisters' petition to determine heirship for the reason that this court has been provided with no transcript of the hearing. Under such circumstances, the trial court's finding that the sisters did not violate the forfeiture clause of the will must be upheld.

Turning next to the sisters' appeal, it is their contention that the court erred in providing that the promissory notes to be executed by the widow should bear no interest other than on overdue installments. The sisters point out that the fourth paragraph of the will divides the estate equally between themselves and the widow. Although the seventh paragraph gives the widow the right to take the riding academy as "her one-half (1/2) distributive share," such right is expressly made conditional, in the event that the value of the riding academy is greater than one-half the value of the estate, upon the widow's executing secured promissory notes in favor of the sisters for "their share of my estate as hereinbefore devised and bequeathed to them." The sisters assert that the overall effect of this provision is to create a "loan," whereby the widow is given the right to withhold or "borrow" from the sisters a portion of their distributive share of the estate. Under such circumstances, the sisters contend that Civil Code, section 1914, which provides that a loan of money is presumed to be made upon interest, must be deemed controlling. The sisters also contend that their right to receive interest on the promissory notes may be implied from the testator's clearly expressed intent that his estate was to be divided equally between his wife and his two sisters. In the event that the notes did not bear interest, the sisters contend that this intent would be defeated and that the widow would in fact receive far more than her one-half of the estate. As a third argument, the sisters point out that the seventh paragraph of the will specifically provides that "my said wife shall have the privilege of paying off the balance of said notes at any time that she is able to." The sisters assert that the use of the term "privilege" is meaningless with reference to the promissory notes unless the testator intended that the notes were to bear interest and therefore recognized that prepayment of the notes would constitute a detriment to the payees under the notes. The latter two contentions are sound.

Probate Code, section 102, provides in relevant part that "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative. ..." It is apparent that if the testator had intended that the notes to be executed by his widow were not to bear interest, there would have been no conceivable reason to provide that she should have the privilege of prepaying such notes. This provision becomes operative and meaningful only if the notes were intended to be interest bearing. Moreover, the sisters are also correct in asserting that the testator's manifest desire to divide his estate equally between his widow and his two sisters can be effectuated only by the allowance of interest upon the notes.

The sisters' second and final contention is that the court erred in failing to provide that the promissory notes should become due upon the widow's death or upon her ceasing to operate the riding academy. The widow, in reply to this contention, points out that this matter was not raised in the trial court and concedes that since the decree determining heirship specifically provides that the promissory notes shall contain "such other terms and provisions as the Court shall deem to be reasonable," the sisters will have an opportunity to raise this issue at a later hearing. An examination of the language employed in the decree appealed from does indicate that the trial court contemplated a further hearing, at which time it would consider what other terms and conditions should be incorporated into the promissory notes to be executed by the widow. Under such circumstances, the sisters will be entitled, at that time, to raise the issue of whether the promissory notes should become due upon the death of the widow, or upon her ceasing to operate the riding academy. It is apparent that any issue concerning this matter is not before us at this time.

For the reasons above stated, that portion of the decree appealed from which provides that the promissory notes to be executed by the widow should bear no interest, is reversed with directions that the decree be modified to provide that said notes shall bear interest at the rate of 7 per cent per annum. In all other respects, the decree is affirmed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied January 13, 1964.