[Civ. No. 33327. Second Dist., Div. Three. Dec. 26, 1968.]

Estate of LOUISE J. BALYEAT, Deceased. VIRGINIA McLAUGHLIN et al., Respondents, v. ROBERT HANN McLAUGHLIN et al., Appellants.

Edwards, Edwards & Ashton, Jerry K. Staub, Barrick, Poole & Olson, John H. Poole and Bruce M. Gleason for Appellants.

Young & Young and Walter H. Young for Respondents.

FORD, P. J.—Two sons of the testatrix have appealed from the portion of the judgment determining that under the provisions of the *in terrorem* clause of the will they were not entitled to receive the residue of the estate because each had filed a contest of the codicil to the will. A third son, born of a prior marriage, who was not mentioned by name in the will, has also appealed from that judgment under which he received no part of the estate. Under the judgment the residue of the estate, which the two sons were held to have forfeited, was ordered distributed to their children, the grandchildren of the testatrix, one of the conclusions of law being as follows: "Robert C. McLaughlin, Michelle McLaughlin Lanning and Lisa A. McLaughlin, the grandchildren of the decedent, Louise J. Balyeat, are heirs at law of said decedent next in line after the disinherited sons of the decedent and inherit under the Will by right of representation."

The will of the decedent, Louise J. Balyeat, was executed on May 18, 1963. Therein she declared that she had been married twice, one husband being F. C. McLaughlin who had died and the other being Roy H. Balyeat, who was then living; that the issue of her marriage to Mr. McLaughlin were Robert Hann McLaughlin and Charles Horace McLaughlin; that all of her property was her separate property and not the community property of herself and Mr. Balyeat, for which reason she excluded him from her will.

There was a bequest of $2,500 to Virginia McLaughlin, the former wife of Charles Horace McLaughlin, which bequest was to go to two grandchildren, Michele and Lisa McLaughlin, in the event Virginia did not survive the testatrix. Aside from that bequest, in her will the testatrix disposed of her estate as follows: "FOURTH: I hereby give, devise and bequeath all the rest and residue of my estate of whatsoever nature or description and wheresoever situate unto my two sons, ROBERT HANN McLAUGHLIN and CHARLES HORACE McLAUGHLIN, share and share alike. In the event that either of my said sons shall predecease me, said deceased son's share

558

shall go to his lawful heirs, and in the event there are no such heirs, said deceased son's share shall go to the survivor of my said sons.''

The provision of the will which has given rise to the present controversy was as follows: ''FIFTH: I hereby generally and specifically disinherit each, any and all persons whomsoever claiming to be or who may be lawfully determined to be heirs at law of mine, except as expressly mentioned in this Will; and if any of such persons or such heirs, or any devisee or legatee under this Will, or their successor in interest, or any person who, if I died intestate, would be entitled or shall lawfully become entitled to inherit any part of my estate, shall either directly or indirectly, singly or in conjunction with others, seek to establish or assert any claim to my estate, or any part thereof, except under the provisions of this Will, or to impair, invalidate or set aside its provisions, or to have the same or any part thereof, or any legacy, bequest or devise, limited, declared void or diminished, or to defeat or change any part of the testamentary plan of this Will, or shall consent to or acquiesce in or fail to contest any such proceeding, or shall endeavor to secure or take any part or parts of my estate in any manner other than through or under this Will, then in any one or more of the above mentioned cases or events I hereby give and bequeath to such person or persons the sum of One Dollar ($1.00) each and no more, in lieu of any other share or interest in my estate, and all of the rest of the share or interest in my estate which would otherwise have gone to such person or persons by gift, devise, bequest or inheritance or which such person or persons may be entitled to take under any provisions of law, shall go and I do hereby give, devise and bequeath the same to my heirs at law according to the laws of succession of the State of California then in force, excluding all such contestants and all persons conspiring with or voluntarily assisting them.''

Nearly two years later, on May 3, 1965, the testatrix executed a codicil to her will in which she stated that she thereby republished the will. She declared that her purpose and intention as set forth in the will had not changed except as set forth in the codicil. In lieu of paragraph FOURTH of the will, the codicil contained a provision which was in part as follows: ''FOURTH: I hereby give, devise and bequeath all the rest and residue of my estate of whatever nature or description and wheresoever situated, including all failed and lapsed gifts, to WILLIAM ANSON and JOHN S. BYRNES, JR., as Co-Trustees, In

TRUST, to hold, manage and distribute as hereinafter provided.'' In the next clause of that paragraph of the codicil it was provided that the management of the property would be in the hands of the trustee. The clauses which immediately followed were: ''2. The term of said trust shall be for a period of three (3) years. During said term, the Co-Trustees shall pay any income to said trust, after deducting expenses, to my two sons, ROBERT HANN MCLAUGHLIN and CHARLES HORACE MCLAUGHLIN, in equal shares, at any convenient time, but not less than quarterly. In the event that either of my said sons shall die prior to the termination of said trust, his share of the income shall be held and distributed upon the termination of said trust as hereinafter provided. 3. At the end of three years, the principal of said trust estate shall be distributed to my two sons, share and share alike. In the event that either of my said sons shall at that time be diceased [sic], said deceased son's share shall go to his lawful heirs, together with any of his share of accumulated income, and in the event there are no such heirs, said deceased son's share shall go to the survivor of my said sons.''

The contests of the codicil filed by Charles Horace McLaughlin and Robert Hann McLaughlin[1] were not pressed but were dismissed. The codicil was admitted to probate on January 24, 1966. A judgment providing for distribution of the estate was signed and filed on April 17, 1967. Thereafter, in addition to motions for a new trial filed by Charles Horace McLaughlin and Robert Hann McLaughlin, the executor filed a motion ''for modification of the Findings of Fact and Conclusions of Law and Judgment'' upon the ground of newly discovered evidence, it being stated that the motion was based upon the provisions of section 662 of the Code of Civil Procedure.[2] In support of the motion the executor filed his declaration in which he stated that on May 2, 1967, Eugene

[1]The grounds of each contest were that at the time of the execution of the codicil the testatrix was not of sound and disposing mind and that the codicil was not executed in the manner required by law.

[2]Section 662 of the Code of Civil Procedure is as follows: ''In ruling on such motion [for a new trial], in a cause tried without a jury, the court may, on such terms as may be just, change or add to the findings, modify the judgment, in whole or in part, vacate the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the findings and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment rendered. Any judgment thereafter entered shall be subject to the provisions of sections 657 and 659 of this code.''

Hann Tomlin had presented himself to the executor at his office and had shown to him certain documents "which established that said Eugene Hann Tomlin is the son of the deceased, Louise J. Balyeat, and a direct heir at law." The executor asserted that under the findings of fact and conclusions of law Mr. Tomlin was "entitled to one-third of the residue of the estate . . . in that the Court found that due to the contest filed by Robert Hann McLaughlin and Charles Horace McLaughlin, the Testatrix became intestate insofar as said residue is concerned." On June 7, 1967, the court made an order that "the Order of Distribution heretofore made and entered herein on the 19th day of April, 1967, is hereby vacated on the basis of newly discovered evidence in regard to distribution of the estate."

When the matter came on for further hearing on October 5, 1967, counsel for Robert Hann McLaughlin stated that he desired to offer evidence as to the facts surrounding the making of the will for the purpose of showing the intent of the testatrix with respect to the *in terrorem* clause and her intent to protect her two sons named in the will.[3] The court ruled that such evidence would not be received, a portion of the court's statement being as follows: ". . . as a matter of law the *in terrorem* clause is clear and it is . . . a matter of law whether filing the contest and then dismissing it is sufficient to bring the *in terrorem* clause into being."[4] Counsel for Charles Horace McLaughlin expressed his desire to offer "evidence as to her intent at the time she executed the Will and Codicil" but the court ruled in effect that such evidence would not be received.

 The concept of the parol evidence rule upon which the trial court based its exclusion of evidence is not in harmony with the view prevailing in this state as expressed in *Estate of Russell,* 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353]. Therein the Supreme Court stated (page 205): "First, as

---

[3]As set forth in the first and final account of the executor, the assets of the estate on hand were of the value of approximately $97,000 as of October 21, 1966. As has been noted, the amount bequeathed to Virginia McLaughlin was $2,500.

[4]Thereafter, counsel for Robert Hann McLaughlin made an offer of proof, part thereof being that there was a very close relationship between Robert and his mother, the testatrix, that under the will of the senior Mr. McLaughlin his interest in the community property had been left to the two sons, and that the two sons had, at their mother's request, assigned their interest to her without consideration upon her promise that the property would be left to them upon her death.

Counsel for Charles Horace McLaughlin thereafter made a brief statement by which he in effect joined in the offer of proof.

we have said many times: 'The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible.' (*Estate of Wilson* (1920) 184 Cal. 63, 66-67 [193 P. 581].) The rule is embedded in the Probate Code. (§ 101.) Its objective is to ascertain what the testator meant by the language he used."

■ Of particular import with respect to the case presently before this court is the following language in *Estate of Russell* (pages 208-209): "In order to determine initially whether the terms of *any written instrument* are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous. 'Words are used in an endless variety of contexts. Their meaning is not subsequently attached to them by the reader but is formulated by the writer and can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended.' (*Universal Sales Corp.* v. *California etc. Mfg. Co.* (1942) 20 Cal.2d 751, 776 [128 P.2d 665], (Traynor, J., concurring).) . . . (. . . see also Corbin, *The Interpretation of Words and the Parol Evidence Rule* (1965) 50 Cornell L.Q. 161, 164: '[W]hen a judge refuses to consider relevant extrinsic evidence on the ground that the meaning of written words is to him plain and clear, his decision is formed by and wholly based upon the completely extrinsic evidence of his own personal education and experience'; [further citations].)" The Supreme Court further stated (page 210): "Accordingly, we think it is self-evident that in the interpretation of a will, a court cannot determine whether the terms of the will are clear and definite in the first place until it considers the circumstances under which the will was made so that the judge may be placed in the position of the testator whose language he is interpreting. (Cf. Code Civ. Proc., § 1860.) Failure to enter upon such an inquiry is failure to recognize that the 'ordinary standard or "plain meaning," is

simply the meaning of the people who did *not* write the document.' (9 Wigmore, *op. cit., supra,* § 2462, p. 191.) ''

If in the light of the extrinsic evidence of the circumstances under which a will was made[5] the provision in question is reasonably susceptible of two or more meanings claimed to have been intended by the testator, an uncertainty arises upon the face of the will. (*Estate of Russell, supra,* 69 Cal.2d 200, 211-212.) In the present case, as has been noted, except for a proportionately small bequest to Virginia McLaughlin, the testatrix provided that her estate should go to her two sons, Robert Hann McLaughlin and Charles Horace McLaughlin. The provision substituted by means of the codicil did not constitute a revocation of such devise and bequest but merely placed a restriction thereon in the form of a trust for the short period of three years,[6] during which the two sons were to receive the income available for distribution. The evidence of surrounding circumstances which the court refused to receive was sought to be introduced to show that the primary purpose for the use of the *in terrorem* clause was to interpose a shield for their protection, not to afford a weapon for the diversion of the bulk of the estate from them to persons who would not otherwise share in the residue in the

---

[5]Evidence expressly excluded by statute cannot, of course, be received. Thus section 105 of the Probate Code provides in pertinent part that ''when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations [of the testator as to his intentions].''

[6]Under some circumstances a trust may be terminated before the time designated. It is stated in *Estate of Nicely,* 235 Cal.App.2d 174, at page 181 [44 Cal.Rptr. 804]: ''The rules applicable to termination [of a trust] are: The beneficiaries of a trust who are all *sui juris* may seek its termination but only when all of the following conditions are met: (1) all beneficiaries of the trust must join in the consent; (2) the trust involved must be one which does not contain 'spendthrift' limitations; (3) there must be no provision in the will evidencing an intention by the trustor that a power of termination shall not exist. (*Fletcher* v. *Los Angeles Trust & Savings Bank,* 182 Cal. 177 [187 P. 425]; *Estate of Easterday,* 45 Cal.App.2d 598 [114 P.2d 669].) '' Witkin states: ''The theory on which the courts order termination is that there is no further reason to continue the trust. If, however, there is some purpose still to be served, termination will not be permitted, despite consent, and irrespective of the interests of all living beneficiaries.'' (4 Witkin, Summary of Cal. Law (7th ed. 1960) Trusts, § 76, pp. 2960-2961.)

The present record does not disclose the purpose of the testatrix in providing for the trust by means of her codicil or whether that purpose was still in existence at the time of her death. Consequently, on this appeal the record does not permit a consideration of whether the contests were such as to be in conflict with her purpose in providing for the trust, assuming that such matter is a proper one for consideration, a matter which this court does not undertake to decide on this appeal.

absence of the death of one or both of the brothers McLaughlin. For reasons which have been stated, the court was in error in refusing to hear such evidence[7] and the judgment cannot stand insofar as it embodies a determination of the persons entitled to receive distribution of the estate. The appealing parties are entitled to a plenary trial of the issues involved.

As has been noted, the court determined that the grandchildren were heirs at law of the decedent "next in line after the disinherited sons of the decedent and inherit under the Will by right of representation." Furthermore, the court found that Eugene Hann Tomlin was a son of the testatrix and that she had him "in mind at the time she made the disinheritance clause in her will." The court determined that Mr. Tomlin was not entitled to share in the estate. On this appeal he makes no claim that he is a pretermitted heir but he contends that he is the only person who qualifies under the will as an heir at law and that he is entitled to receive the residue of the estate. If upon a retrial it is determined that the brothers McLaughlin forfeited their rights to the residue of the estate because of their respective contests of the codicil, the issue will arise as to the person or persons entitled to receive the residue of the estate. It would not be appropriate to consider that issue except in the light of the record which will result from a retrial of the matter and, consequently, this court does not undertake to do so in this opinion.

That portion of the judgment which sets forth the persons entitled to receive distribution of the estate and the manner of such distribution is reversed and the matter is remanded to the superior court for further proceedings consistent with the foregoing opinion. Each party to the appeal shall bear his or her own costs on appeal.

Cobey, J., and Moss, J., concurred.

[7] Counsel for the grandchildren state in their brief that at the time the court vacated the first judgment it "was made clear that the only thing that was going to be heard was whether Eugene Hann Tomlin was an heir." The portion of the record to which counsel refer was as follows: "MR. YOUNG [attorney for the grandchildren]: Then the only thing that is going to be heard is whether this party, Eugene Hann Tomlin, is an heir, I take it? THE COURT: Yes, . . . I am going to vacate the judgment for the purpose of putting the petition for distribution back on calendar." As has been noted hereinabove, the order was not so limited. If it is of any significance, it is to be noted that after the court made the statement upon which the grandchildren place reliance and after further colloquy, the court stated that the order of distribution would be vacated entirely and that the parties could "fight it all over again."