[No. B091618. Second Dist., Div. Seven. June 21, 1996.]

LORRAINE JACOBS-ZORNE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HELEN SWONETZ, Real Party in Interest.

## COUNSEL

Lee Zorne for Petitioners.

No appearance for Respondent.

Choate & Choate and Joseph Choate, Jr., for Real Party in Interest.

## OPINION

**JOHNSON, J.**—Helen Swonetz, the surviving spouse of Harry Swonetz, filed a petition under Probate Code section 9860[1] seeking to have the nature of certain bank accounts determined to be joint tenancy as opposed to

---

[1]Probate Code section 9860 provides: "(a) The personal representative or any interested person may file a petition requesting that the court make an order under this chapter in any of the following cases:

"(1)  Where the decedent while living is bound by a contract in writing to convey real property or to transfer personal property and dies before making the conveyance or transfer and the decedent, if living, could have been compelled to make the conveyance or transfer.

"(2)  Where the decedent while living binds himself or herself or his or her personal representative by a contract in writing to convey real property or to transfer personal property upon or after his or her death and the contract is one which can be specifically enforced.

probate property. The executor and other beneficiaries under the will objected, claiming such action violated the no contest provision in Harry Swonetz's will. Mrs. Swonetz filed a motion for summary adjudication on this issue. The executor and beneficiaries appeal from the court's determination the no contest clause was not violated by Mrs. Swonetz's action.

### FACTS AND PROCEEDINGS BELOW

Real party in interest, Helen Swonetz, is the surviving spouse of Harry Swonetz who died on October 31, 1992. The two were married on January 25, 1986. Eleven days before their marriage, Mr. Swonetz executed his last will and testament. It declared his intention to marry Mrs. Swonetz, stated all references to a spouse were to her, and listed who his children and grandchildren were, including appellants, Lorraine Jacobs-Zorne, Shirley Shuman[2] (his two daughters) and Marc Paul Jacobs (one of four grandchildren).

Article second of the will provided: "I confirm to my spouse my spouse's interest in our community property, if any, and my spouse's interest in my quasi-community property, if any, as defined in Section 66 of the California Probate Code. It is my intention by this Will to dispose of my separate property, my one-half (½) interest in our community property and my one-half (½) interest in my quasi-community property, if any."

Mr. Swonetz gave his personal property to his daughters in article third of the will and gave Mrs. Swonetz his interest in any home they were living in at the time of his death. Then, in article sixth, Mr. Swonetz made the following gifts:[3]

1.  To Mrs. Swonetz: $50,000 plus $10,000 for each year they remained married, to a maximum of $50,000 (if she survived Mr. Swonetz for 120 days).

2.  To his daughter, Lorraine Jacobs: $100,000.

3.  To his daughter, Shirley Mellet: $100,000.

4.  To his grandson, Marc Jacobs: $12,000.

"(3) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another.
"(4) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another."

[2] Shirley Shuman was previously known as Shirley Mellet.

[3] According to article seventh, the residue of the estate was to be divided among the children, grandchildren and great-grandchildren in amounts proportionate to the amounts distributed in article sixth.

A no contest clause, inserted as article eighth, provided, "[i]f any beneficiary under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any share or interest in my estate given to that contesting or attacking beneficiary under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting or attacking beneficiary had predeceased me without issue."

On January 24, 1986, Mr. and Mrs. Swonetz executed an antenuptial agreement. Pursuant to the agreement, each party's separate property would remain separate unless there was a valid writing to change the nature of that property. During the course of their marriage, Mr. Swonetz transferred several bank accounts and a treasury bill, which initially were his separate property and had been in his name alone, to himself and Mrs. Swonetz in joint tenancy.

Mr. Swonetz died on October 31, 1992, and his will was admitted to probate. Mrs. Swonetz turned over the passbooks to these accounts to the executor of the estate (decedent's grandson, Marc Jacobs). On April 30, 1993, Mrs. Swonetz filed a petition under California Probate Code section 9860 entitled "Petition by Surviving Spouse to Determine Ownership of Property, And For Order Directing Representative to Transfer Property In Possession of Estate to Petitioner" (hereinafter the Petition). The Petition sought to have the nature of the accounts determined to be joint tenancy as opposed to probate property. The executor (decedent's grandson) and the two daughters filed objections to the Petition. They alleged the act of filing the Petition constituted an attack or contest[4] to Mr. Swonetz's will under the terms of the no contest clause and, as a result, Mrs. Swonetz forfeited any right to inherit under the will.

On October 1, 1993, Mrs. Swonetz moved for summary adjudication on this issue. On November 5, 1993, Judge David Rothman granted the motion for summary adjudication indicating it was to be included in any final judgment, but did not sign the order. In May 1994, after a trial on the merits, Judge Irving Shimer signed an "Order Determining Ownership of Property." Because it did not mention the previous adjudication, the order was later set aside and vacated. Judge Rothman signed the original order granting summary adjudication on March 7, 1995, and appellants filed notice of appeal from that order on March 14, 1995.

---

[4]Probate Code section 21300 subdivision (a) defines "contest" as "an attack in a proceeding on an instrument or on a provision in an instrument."

DISCUSSION

I. *Although Petitioners Appealed From a Nonappealable Order, We Will Treat the Matter as a Petition for a Writ of Mandate.*

A. *The Order of Summary Adjudication Is Not an Appealable Order.*

■ The existence of an appealable judgment is a jurisdictional prerequisite to an appeal. Thus, this court is obligated to review the question of appealability. (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720]; *Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074].)

California is governed by the "one final judgment" rule which provides "interlocutory or interim orders are not appealable, but are only 'reviewable on appeal' from the final judgment." (*Rao* v. *Campo* (1991) 233 Cal.App.3d 1557, 1565 [285 Cal.Rptr. 691].) The rule was designed to prevent piecemeal dispositions and costly multiple appeals which burden the courts and impede the judicial process. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 741, fn. 9 [872 P.2d 143].) In keeping with this rule, California Code of Civil Procedure section 904.1 generally authorizes appeals from superior court judgments, except those which are interlocutory. (Code Civ. Proc., § 904.1, subd. (a)(1).) Further, when an appeal is taken pursuant to section 904.1, the reviewing court may review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantively affects the rights of a party." (*Id.,* § 906.)

It is the substance and effect of the adjudication, and not the form, which determines if the order is interlocutory and nonappealable, or final and appealable. (*Belio* v. *Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101 [39 Cal.Rptr.2d 737].) If no issues in the action remain for further consideration, the decree is final and appealable. But if further judicial action is required for a final determination of the rights of the parties, the decree is interlocutory. (*Ibid.*) The decree will not be appealable "unless it comes within the statutory classes of appealable interlocutory judgments." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeals, § 67, p. 91; see also *Eldridge* v. *Burns* (1978) 76 Cal.App.3d 396, 403 [142 Cal.Rptr. 845].)

■ The first inquiry is whether the order granting summary adjudication in this action is interlocutory or final. Generally, an order granting summary adjudication is an intermediate order which is "reviewable on appeal from the *final judgment* in the action." (*Jennings* v. *Marralle, supra,* 8 Cal.4th 121,

128, italics added.) However, such an order is appealable if it effectively disposes of the entire matter. (*Belio* v. *Panorama Optics, Inc.*, *supra*, 33 Cal.App.4th 1096, 1101.)

Defendants appeal, not from a final judgment, but from an order, under Code of Civil Procedure section 437c, granting summary adjudication as to a specific issue. They argue the court, in determining there was no merit to their claim and affirmative defense that filing the Petition constituted a will contest, effectively disposed of the entire case by leaving no issues for further consideration. This argument fails, however, because following the summary adjudication, there was a trial on the merits of the Petition itself. Thus, this court finds the order granting summary adjudication to be interlocutory.

The next inquiry is whether this interlocutory order is appealable. Mrs. Swonetz's motion was brought pursuant to Code of Civil Procedure section 437c which authorizes parties to move for summary adjudication as to one or more affirmative defenses or claims for damages. (Code Civ. Proc., § 437c, subd. (f)(1).) Although section 437c states that summary judgments are appealable, it also provides for orders other than for summary judgment (i.e., summary adjudication), the proper remedy is a petition for a peremptory writ, not an appeal. (*Id.*, § 437c, subd. (*l*).) Thus, the order is not appealable under this section.

Code of Civil Procedure section 904.1 specifically excepts interlocutory orders from its list of appealable judgments.[5] It does, however, allow an appeal "[f]rom an order made appealable by the provisions of the Probate Code or the Family Code." (*Id.*, § 904.1, subd. (a)(10).) Under Probate Code section 21320, a beneficiary, in essence, can ask the court for a determination as to whether some proposed act would trigger a no contest clause before actually taking that step and risking such a violation.[6] The court's determination can then be appealed pursuant to Probate Code section 7240 which provides, "[a]n appeal may be taken from the making of, or the refusal to make, any of the following orders: [¶] . . . [¶] (q) Determining whether a

---

[5]"An appeal may be taken from a superior court in the following cases: (1) From a judgment, except (A) an interlocutory judgment, . . ." (Code Civ. Proc. § 904.1, subd. (a).)

[6]Probate Code section 21320: "(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause.

"(b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) by the beneficiary is limited to the procedure and purpose described in subdivision (a) and does not require a determination of the merits of the motion, petition, or other act by the beneficiary."

specific beneficiary action constitutes a contest under Chapter 2 (commencing with Section 21320) of Part 3 of Division 11." (Prob. Code, § 7240.)

Although Mrs. Swonetz sought a determination that filing the Probate Code section 9860 petition would not constitute a will contest, she brought this as a summary adjudication motion under Code of Civil Procedure section 437c and in response to an affirmative objection the other beneficiaries raised. This does not constitute a determination under Probate Code section 21320. The latter motions are filed by persons contemplating actions which potentially constitute will contests *before* taking such action. In this case, however, Mrs. Swonetz filed a motion for summary adjudication *after* taking action, that is, filing the Probate Code section 9860 petition. Thus, the order in this case is not appealable under Code of Civil Procedure section 904.1, subdivision (a)(10) or under the Probate Code.

### B. *The Matter Will Be Treated as a Petition for Writ of Mandate.*

As noted previously, a petition for writ, not an appeal, is the appropriate means for obtaining review of the order granting summary adjudication. (Code Civ. Proc., § 437c, subd. (*l*).) Generally, a writ is issued in cases "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (*Id.*, § 1086.)

In this case, the executor of Mr. Swonetz's will cannot distribute assets under the will and finalize probate proceedings until the question of whether Mrs. Swonetz's Petition constituted a will contest is answered. If we deny review, then a determination of the parties' rights would be delayed until such time as a final judgment is entered, an appeal sought, and briefing by the parties completed. Clearly, this is not a speedy remedy for the parties and judicial economy would not be served by deferring resolution of the issue in dispute. Under the circumstances, we determine it proper we treat the appeal as a petition for writ of mandate and proceed on that basis. (*Green* v. *GTE California, Inc.* (1994) 29 Cal.App.4th 407, 410 [34 Cal.Rptr.2d 517]; *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 51 [162 Cal.Rptr. 786]; *Branham* v. *State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 32 [121 Cal.Rptr. 304].)

### II. *Filing the Petition Pursuant to Probate Code Section 9860 Did Not Constitute a "Contest" Within the Meaning of the Will's No Contest Clause.*

### A. *No Contest Clauses Should Be Strictly Construed.*

■ An in terrorem or no contest clause conditions a beneficiary's right to take under a will or trust instrument on acquiescence to the terms of the

instrument. (*Burch* v. *George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92]; *Estate of Hite* (1909) 155 Cal. 436, 441 [101 P. 443].) It discourages challenges by beneficiaries by imposing a penalty of forfeiture. (*Estate of Black* (1984) 160 Cal.App.3d 582, 586 [206 Cal.Rptr. 663].)

The law regarding no contest clauses is not uniform. Some jurisdictions refuse to give effect to no contest clauses; others give effect to the clause only when a person files a contest without probable cause. "California continues to follow the traditional, and now minority, rule to allow enforcement of the clause regardless of the beneficiary's probable cause in making the contest." (Recommendation Relating to No Contest Clauses (Jan. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 11 (hereafter Recommendation); 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 530, p. 552.)

No contest clauses are enforceable "on the theory that a testator has the power to impose any condition he may desire upon the beneficiary's right to receive a legacy"—provided the condition does not violate public policy. (Garb, *The In Terrorem Clause: Challenging California Wills* (1979) 6 Orange County Bar J. 259, 260; *Estate of Hite, supra,* 155 Cal. 436, 439-441.) While they are favored by the policy of discouraging litigation, no contest clauses are also disfavored by the policy against forfeiture. (*Estate of Black, supra,* 160 Cal.App.3d 582, 586-587; *Burch* v. *George, supra,* 7 Cal.4th 246, 254; see also Leavitt, *Scope and Effectiveness of No-Contest Clauses in Last Wills and Testaments* (1963) 15 Hastings L.J. 45, 47.) Accordingly, they are " ' "strictly construed and not extended beyond what was plainly the testator's intent." ' " (*Estate of Richter* (1993) 12 Cal.App.4th 1361, 1367 [16 Cal.Rptr.2d 108], quoting *Estate of Black, supra,* 160 Cal.App.3d 582, 587; see Probate Code section 21304 ["In determining the intent of the transferor, a no contest clause shall be strictly construed."].) The basic question is usually whether certain conduct will be deemed a "contest" of the will within the meaning of the words used by the testator in the will's no contest clause.

■ California cases have approached the meaning of "strict construction" in different ways. "Whereas 'strict construction' of wills emphasizes the written word and confines interpretation to the 'plain meaning' of the words found within 'the four corners of the instrument,' a more 'liberal construction' emphasizes the testator's intent as the primary determinant and thus allows extrinsic evidence of that intent." (Collins & Skover, *Paratexts* (1992) 44 Stan.L.Rev. 509, 541-542, fn. 171, citing Atkinson, Handbook of the Law of Wills (1953) pp. 808-809.) Thus, in one line of cases, the concept of a contest was "given its definitive legal meaning and not a 'popular'

meaning" or was limited to "technical attack[s] on the competency of the testator, fraud, or undue influence" in making the will. (Garb, *The In Terrorem Clause: Challenging California Wills*, *supra*, 6 Orange County Bar J. at p. 263.) In the other line of cases, the court considered "whether or not the action thwarted the decedent's intent" or "whether there was a purpose to defeat the provisions of the will." (*Id.*, at pp. 263, 264, italics omitted.)

The Legislature became concerned that under existing law a beneficiary could not predict when an activity would fall within the proscription of a particular no contest clause. Thus, it recently amended the Probate Code resolving the conflict in case law in favor of strict construction. (Recommendation, *supra*, 20 Cal. Law Revision Com. Rep. at p. 12, referring to Garb, *The In Terrorem Clause: Challenging California Wills*, *supra*, 6 Orange County Bar J. 259.) By enacting Probate Code section 21304, the Legislature placed "its stamp of approval on the narrow and cautious approach to such provisions" by the judiciary. (*Burch* v. *George*, *supra*, 7 Cal.4th 246, 277 (dis. opn. of Kennard, J.).)

The parties in this matter agree the will must be executed according to Mr. Swonetz's intent. They disagree, however, as to whether Mr. Swonetz intended for Mrs. Swonetz's Petition to be deemed a contest within the meaning of the no contest clause in his will. Petitioners' arguments are essentially twofold. First, the trial court should have considered extrinsic evidence, as well as the instrument itself, to determine the testator's intent. Second, because the testator's intent is paramount, any action which thwarts this intent should be deemed a will contest.

### 1. *Admission of extrinsic evidence was not appropriate in this case.*

Petitioners argue this court should follow those cases which have favored a liberal construction of will contest provisions. Thus, petitioners' analysis centers on the proposition the court can interpret the provisions of a will only through consideration of the testator's general purpose as gleaned from the instrument and all relevant extrinsic evidence. (*Estate of Balyeat* (1968) 268 Cal.App.2d 556 [74 Cal.Rptr. 120]; *Estate of Russell* (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353]; see also *Estate of Wilson* (1920) 184 Cal. 63 [193 P. 581].) The cases cited in support of this argument, however, rest on faulty reasoning, or have been superseded by Probate Code section 21304, or are factually distinguishable.

In *Estate of Balyeat*, *supra*, 268 Cal.App.2d 556, an opinion preceding adoption of Probate Code section 21304, the court addressed the issue whether there was a will contest within the meaning of a no contest clause

where two sons contested a codicil,[7] but later dismissed the action. The trial court held there was a will contest, but the appellate court, relying on *Estate of Russell, supra,* 69 Cal.2d 200 and *Estate of Wilson, supra,* 184 Cal. 63, remanded, ruling the trial court should have considered extrinsic evidence in determining whether the terms of the documents were ambiguous and to clarify the instrument's provisions. (*Estate of Balyeat, supra,* 268 Cal.App.2d 556, 560-563.) Not only is *Balyeat* probably now inconsistent with the strict construction mandate of section 21304, we consider the *Balyeat* court's reliance on *Russell* and *Wilson* to be misplaced.

In both *Estate of Russell* and *Estate of Wilson,* not only were there no forfeiture clauses, the issues revolved around the question of what the testator intended to give the beneficiaries in light of the conflicting statements within the wills. It was necessary for the court to consider extrinsic evidence of the testator's intent in order to determine who was to receive under the wills because the wills were not clear on their face. The *Balyeat* court, in relying on *Estate of Russell* and *Estate of Wilson,* applied rules governing interpretation of other terms within the will to interpretation of a no contest clause. We do not consider that appropriate since interpretation of other clauses of a will is not subject to the "strict construction" mandate of Probate Code section 21304. In any event, we find no ambiguity in the no contest clause of the instant will. Consequently, even were we to follow *Balyeat,* we would conclude the trial court did not err in failing to receive extrinsic evidence.

   2.   *Thwarting of the testator's intent is not the appropriate test in determining whether a no contest clause has been triggered.*

Petitioners rely on several pre-Probate Code section 21304 cases, *Estate of Hite, supra,* 155 Cal. 436; *Estate of Howard* (1945) 68 Cal.App.2d 9 [155 P.2d 841], and *Estate of Kazian* (1976) 59 Cal.App.3d 797 [130 Cal.Rptr. 908], to support their contention that because the testator's intent is paramount, any action which thwarts the intent should be deemed a will contest. Fundamentally, this argument is problematic because it flies in the face of articulated legislative intent.

In *Estate of Hite,* beneficiaries under a will containing a no contest clause challenged a codicil on traditional grounds of nonexecution, want of mental capacity and undue influence in its making. The matter was settled prior to hearing and a later petition by one of the beneficiaries for partial distribution

---

[7]The grounds for the contest were that the testator was "not of sound and disposing mind" when she executed the codicil and that it was not executed in the manner prescribed by law. (*Estate of Balyeat, supra,* 268 Cal.App.2d 556, 559, fn. 1.)

was granted under the codicil. On appeal, the court found the beneficiary had forfeited her rights under the will, even though she had abandoned the contest. (*Estate of Hite, supra*, 155 Cal. 436, 439-444.) The court conceded, "the verb 'contest' is not to be construed according to its popular and primary meanings—to oppose, dispute, contend, or controvert. It is to be given legal significance." (*Id.*, at p. 441.) It then determined that the purpose and end sought by the testator in his use of the word "contest" was "to prevent the invocation of any of the technical rules of law to be employed to thwart his expressed wishes; it was to prevent all attacks upon his character, reputation, or sanity . . . , [and] to secure to the beneficiaries whom he named, the fruits of his bounty." (*Id.*, at p. 443.) A contest would be found when it appeared a beneficiary had challenged the will to thwart these intentions. (*Ibid.*)

The *Hite* court was narrowing, not broadening, the scope of legal proceedings which would constitute a will contest. The court stated the decision in each case must be controlled by the facts. The "mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need [not] be judicially declared a contest. But, wherever an opponent uses the *appropriate* machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest." (*Estate of Hite, supra*, 155 Cal. 436, 444, italics added.) Thus, it is not *any* legal proceeding, but an *appropriate* one that will the trigger the no contest clause. The court did not specifically say what an appropriate proceeding would be; however, the challenge to the will was on traditional grounds. While the result of the case was consistent with the strict construction approach, the dicta muddied the waters and we are not persuaded that dicta should be followed too closely in this case.

In *Estate of Howard, supra*, 68 Cal.App.2d 9, the court followed the reasoning of *Estate of Hite*. There the husband's filed a cross-complaint, claiming an undivided one-half interest in the properties listed on an inventory and appraisal of his wife's estate. The court held this constituted a contest of the wife's will because it was a "legal proceeding" which challenged the validity of decedent's will with respect to property referred to in the will as decedent's separate property. (*Id.*, at pp. 11-12.)

Finally, in *Estate of Kazian, supra*, 59 Cal.App.3d 797, Mr. Kazian filed a complaint to establish community property alleging that all of the property in his wife's estate, including property held in her sole name, was community property. The trial court found no community property interest. Upon the executor's petition, the probate court found the complaint violated the no contest clause because it attempted to thwart the decedent's wishes as

expressed in her will. (*Id.,* at p. 802.) To reach this conclusion, the court recited the rule of strict construction, but then stated that "whether there was a contest 'must be gleaned from a consideration of the purpose[s] that the [testator] sought to attain by the provisions of [his or her] will.' " (*Burch* v. *George, supra,* 7 Cal.4th 246, 281, quoting *Estate of Kazian, supra,* 59 Cal.App.3d 797, 802.) This "purposes" approach "was flatly rejected [in favor of the rule of strict construction] by the Legislature when it adopted Probate Code section 21304." (7 Cal.4th at p. 282.)

It appears the court in *Kazian* (as well as in *Howard)* followed *Hite* in its most literal sense by construing "contest" to mean any legal proceeding which could have the net effect of disturbing the distribution under the will. We find this reading is too broad, and, as a matter of policy and statutory construction of Probate Code section 21304, should not be applied to the facts in this case.

There are also factual distinctions which set the instant case apart from *Kazian.* First, Mr. Kazian's complaint alleged all property in his wife's sole name was community property; Mrs. Swonetz's petition was asking for a determination of ownership of property held in joint tenancy. Second, Mrs. Kazian's will expressly stated " '[a]ll property in which I have an interest or which now stands in my name, . . . is my sole and separate property. . . .' " (*Estate of Kazian, supra,* 59 Cal.App.3d 797, 800.) Mr. Swonetz's will states, "[i]t is my intention by this Will to dispose of my separate property . . . ." This language is not as specific as in *Kazian* because it does not define what property Mr. Swonetz considered his separate property to be. Nor did Mr. Swonetz anywhere in his will say that he could not change the character of his property from separate to community property or joint property between the execution of his will and his death.

For the reasons stated above, petitioner's contentions that 1) extrinsic evidence should be reviewed to determine the testator's intent, and 2) no contest clauses are triggered by actions which thwart that intent, both fail. We find petitioner's cited cases unpersuasive because they do not adhere to a rule of strict construction and on that basis no longer should be followed after enactment of Probate Code section 21304.

B. *Application of Strict Construction Principles to This Case.*

Mr. Swonetz's will purported to give away only his separate property and his share of community property and there were no conflicting legacy provisions (as seen in *Estate of Russell* and *Estate of Wilson).* The only question presented is whether filing a Probate Code section 9860 petition

constitutes a "contest" within the meaning of the will's no contest clause. The trial court granted summary adjudication finding it did not constitute a "contest" and did so without expressly hearing extrinsic evidence of the testator's intent. The court reasoned the testator's intent was only relevant to the determination of the section 9860 Petition, and not appropriate in the context of determining whether the Petition defied the will's no contest clause. This finding is completely in accord with the rule of strict construction as provided in Probate Code section 21304.

Under a strict and narrow construction of the no contest clause, a forfeiture would only result if Mrs. Swonetz were challenging the validity of the will itself on grounds such as competence or undue influence or sought to have provisions of that will nullified or set aside. Mrs. Swonetz's Petition merely asks for the court to determine that certain property is joint tenancy property. It does not challenge the will or any of the provisions, but asserts a claim based on a right independent of the will—a joint tenancy right of survivorship.

C.   *Proceedings by Beneficiaries to Assert Claims Based on Rights Independent of a Will Are Not Prohibited Will "Contests."*

Several California appellate courts, addressing facts and legal issues almost identical to those in the instant case, have determined that in terrorem clauses will not be triggered by proceedings beneficiaries bring to assert claims outside of a will, i.e., based on a source of right independent of the will. For example, in *Estate of Dow* (1957) 149 Cal.App.2d 47 [308 P.2d 475], the court held a widow's claim to establish a community property interest in certain property disposed of by will did not violate the no contest clause.

Similarly, in *Estate of Schreck* (1975) 47 Cal.App.3d 693 [121 Cal.Rptr. 218], the court held a widow's petition to establish joint tenancy ownership did not violate the no contest clause.[8] (*Id.*, at pp. 696, 697.) The court noted forfeiture provisions are to be strictly construed and that under the Probate Code technical terms are to be taken in their technical sense. Therefore, the court reasoned, establishing joint tenancy ownership "is not a succession to any part of the testator's estate. *The widow merely claimed what was already her own.*" (*Id.*, at p. 697, italics added.) In addition, the word "succession,"

---

[8]The will provided the widow was to receive an income from a trust and included a no contest clause which stated: " 'If any person shall, in any manner whatsoever, directly or indirectly, attack, oppose or contest this will, or seek to invalidate it or any portion thereof, or seek to succeed to any part of my estate except through this will, then I give to each such person the sum of One Dollar ($1.00) only, in lieu of any, other, and all provisions made for such person hereunder, . . .' " (*Estate of Schreck, supra,* 47 Cal.App.3d 693, 695, fn. 2)

as used in the will, was defined in the Probate Code as the acquisition of title to property of one who dies intestate. (*Ibid.*) Similarly, Mrs. Swonetz's petition claimed certain property was held in joint tenancy and therefore was not a part of the probate estate.

Despite the similarity in the facts and legal arguments, petitioners contend *Estate of Schreck* is not applicable. First, petitioners point out the differences in the language of the no contest clauses. The *Schreck* provision refers to "persons," including those persons who would seek to succeed to the estate. The Swonetz provision instead refers to "beneficiaries" and makes no reference to succession; however, Probate Code section 24 defines "beneficiary" as "a person to whom a donative transfer of property is made or that person's successor in interest, and: [¶] (a) As it relates to the intestate estate of a decedent, means an heir. [¶] (b) As it relates to the testate estate of a decedent, means a devisee." The differences between the provisions are negligible and do not affect the analysis.

Second, petitioners calculate the *Schreck* widow was only seeking 2.2 percent of the estate whereas Mrs. Swonetz's petition was seeking to have 98 percent of the estate pass to her, which would virtually disinherit everyone under the will. The argument is that Mrs. Swonetz's petition is designed to give her a much larger share of the estate than the decedent originally intended. The *Schreck* opinion did not address whether the result would change if a greater portion of the estate had been sought.

However, nine years later, the court, in *Estate of Black, supra,* 160 Cal.App.3d 582 flatly rejected the same argument as appellants make here and held the beneficiary's claim independent of the will did not constitute a will contest. (*Id.,* at pp. 588-589.) The court stated ". . . the merits of [the] proposed *Marvin* claim are not at issue in this proceeding. Rather, . . . whether, in light of the no-contest clause, the filing of [the] claim would cause her to lose [what] was given to her in the will." (*Id.,* at p. 589.) Similarly, the trial court in this matter was not called upon to determine the merits of the Probate Code section 9860 petition but whether its filing would trigger the no contest clause. What portion of the estate is sought is more pertinent to an inquiry of the *beneficiary's* intent. This type of inquiry is simply not before this court. We are concerned with strictly construing a forfeiture clause in accordance with the *testator's* intent to determine whether he intended for the petition proceeding to fall within the purview of the no contest clause.

In *Estate of Black, supra,* 160 Cal.App.3d 582, the petitioner, a beneficiary and the unmarried cohabitant of the deceased, contemplated filing a petition

under former Probate Code section 851.5, asking the court to determine certain property in decedent's possession was not part of decedent's probate estate but belonged to the petitioner under theories of implied domestic partnership. Before doing so, however, she sought a ruling whether this action would violate the no contest clause.[9] The court held the filing of the petition would not violate the will's no contest clause. The court reasoned the petitioner's claim, "founded upon her economic contribution as a homemaker to the nonmarital partnership . . . [was] analogous to a surviving spouse's claim to community or joint tenancy property outside the will." (160 Cal.App.3d 582, 590.)

The court noted many cases held petitions to determine heirship or seeking construction or interpretation of a will did not constitute a "contest" of the will. (*Estate of Black, supra*, 160 Cal.App.3d 582, 588, citing *Estate of Basore* (1971) 19 Cal.App.3d 623, 629-631 [96 Cal.Rptr. 874]; *Estate of Zappettini* (1963) 223 Cal.App.2d 424, 426-429 [35 Cal.Rptr. 844]; *Estate of Harrison* (1937) 22 Cal.App.2d 28, 32-33, 41 [70 P.2d 522]; *Estate of Kline* (1934) 138 Cal.App. 514, 517, 521-523 [32 P.2d 677].) In *Estate of Black*, however, the cohabitant was asking the court to interpret what the testator meant by "my estate," as used in the will, in light of the implied domestic partnership arguments. The court concluded the testator did not intend to dispose by will of property which represented the petitioner's partnership interest because the will was phrased in general terms and expressed an intent to dispose of that property which decedent had the right to dispose of by will. (*Estate of Black, supra*, 160 Cal.App.3d 582, 591.)

Similarly, Mrs. Swonetz's petition was based on an independent source of right outside the will (joint tenancy ownership) and the no contest clause is almost identical to that in *Estate of Black*. Petitioners contend *Estate of Black* is not applicable to the instant case because the language of the will and the surrounding facts are distinguishable. They point out Mr. Black's will stated he intended to dispose of all property which he had the right to dispose of by will, whereas Mr. Swonetz's will made no such declaration. However, Mr. Swonetz stated he intended to dispose of all his separate property and his one-half interest in any community or quasi-community property. This would suggest he was not attempting to dispose of property in which his wife had a legitimate interest as a survivor of joint property.

---

[9]The no contest clause read: " 'If any beneficiary under this will in any manner, directly or indirectly, contests or attacks this will or any of its provisions, any share or interest in my estate given to that contesting beneficiary under this will is revoked. . . .' " (*Estate of Black, supra*, 160 Cal.App.3d 582, 586.)

### D. *A No Contest Clause Is Not Violated Where a Forced Election of Rights Is Not Mandated by the Language of the Will or Trust.*

In *Estate of Richter, supra,* 12 Cal.App.4th 1361, decedent's will differed from a writing he had given his nephew which indicated what his separate property was and how to dispose of it upon his death. The widow sought a finding as to whether filing a petition to determine community property rights would constitute a violation of the no contest clause. The court held it would not violate the clause on two grounds. First, as in *Schreck* and *Black*, the petition was based on rights independent of the will. Second, the court found the language of the will did not force the spouse to elect between ownership rights and rights under the will.

The general rule is that a beneficiary " 'who claims title to property of an estate must elect to either rely upon his claim of ownership and waive his rights under the will, or accept the provisions of the will and waive his rights of ownership.' " (*Estate of Richter, supra,* 12 Cal.App.4th 1361, 1368, quoting *Estate of Howard, supra,* 68 Cal.App.2d 9, 11; see also 12 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, §§ 54-55, pp. 92-95.) The election will be required "if the testator declares that all the property is his separate property, thus clearly indicating a belief that he is disposing of the entire estate." (*Id.,* § 55, p. 94.) Where, as here, the property is referred to in general terms and not identified as separate or community, it may be inferred the testator intended to only dispose of his own interests in property as those interests exist at the time of death.[10]

Mr. Swonetz stated in his will he was disposing only of his separate property and his one-half interest in community and quasi-community property, if any. Additionally, all gifts were made in general monetary terms without identification of the source. In keeping with *Richter*, this would imply Mr. Swonetz did not intend to force an election between rights under the will and ownership rights.

In *Burch* v. *George, supra,* 7 Cal.4th 246, the surviving spouse proposed to file two complaints alleging breach of fiduciary duties and unlawful conversion. The named defendants were the trustees and beneficiaries of the family trust and a pension plan and its administrators. The family trust, which contained a no contest clause, was a trust estate subdivided into six

---

[10]This principle, that a spouse must elect to take a community property interest or take under the will, "applies to any other kind of property right. Thus, where the testator held property in joint tenancy with his wife, and attempted to dispose of it by will to his wife and daughter, the wife had to elect to take either as surviving joint tenant or under the will." (12 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, § 54, p. 93, citing *Estate of Waters* (1972) 24 Cal.App.3d 81, 85 [100 Cal.Rptr. 775].)

separate subsidiary trusts. Five of them were designated to benefit various blood relatives of the decedent and the sixth to benefit his spouse. Prior to his death, he transferred various assets into the trust, including interests in company stock, his pension plan account and six life insurance policies purchased by the pension plan. The widow alleged because the assets transferred were community property, the decedent was giving to his relatives property in which she had an undivided one-half interest. She petitioned the court for a determination as to whether these actions would constitute a will contest.

The court began its analysis by stating that under the rule of strict construction it was obligated to ascertain whether the decedent intended his spouse to forfeit a distribution if she pursued her ownership interests.[11] If this were the case, then petitioner's proposed actions would constitute a violation of the no contest clause. (*Burch* v. *George, supra,* 7 Cal.4th 246, 256.) After a lengthy review of the language in the trust and decedent's will, the court concluded the decedent did intend to put his spouse to an election. (*Id.,* at p. 257.) Accordingly, any attempts to pursue community property rights would result in a waiver of rights under the trust. (12 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, §§ 54-55, pp. 92-95.)

The instant case is distinguishable, however. The *Burch* widow intended to file *complaints* to pursue her community property interests. Because a forced election was implied by the terms of the instruments, the widow would forfeit distribution under the will if she pursued those interests outside the will. Here, Mrs. Swonetz's petition sought a determination that certain property was joint tenancy instead of probate property, and an order directing the representative to transfer joint tenancy property, if any, back to her. But unlike *Burch* the specific terms of Mr. Swonetz's will did not force her to elect between a distribution under the will or her rights to this property outside of the will. Consequently, Mrs. Swonetz's petition did not trigger the no contest clause in her husband's will.

In conclusion, before 1990 California courts approached the concept of "strict construction" in different ways. Some courts interpreted this to mean narrow construction, focusing on the plain meaning of the will itself as well as the words used in the no contest clause to determine what actions the testator was trying to prohibit and whether the beneficiary's actions were

---

[11]*Graham* v. *Lenzi* (1995) 37 Cal.App.4th 248 [43 Cal.Rptr.2d 407], which addressed the issue of whether a trustee would have standing to appeal, only relied on *Burch* to the extent it provided a breach of a forfeiture clause would only result when an act was strictly within the express terms of the no contest clause. (*Id.,* at p. 255, citing *Burch* v. *George, supra,* 7 Cal.4th 246, 254-255.)

prohibited. Other courts claimed to apply strict construction but, in fact, broadly interpreted the no contest clause and used extrinsic evidence to determine whether the action thwarted the decedent's intent in some way or whether there was a purpose to defeat some provision of the will. In both cases, courts agree the testator's intent is paramount, but differ in how they decide what the testator's intent actually was.

In 1990, the California Legislature responded to the conflict in the case law by choosing the line of cases favoring a true, narrow, strict construction. In keeping with this rule, certain patterns have developed in the case law. Normally, a beneficiary's attempt to have property characterized in a particular way (i.e., as joint tenancy property, domestic partnership property, community property, or the like) is not considered an attack on the will or on provisions within the will. Only when it is found the testator intended to force a beneficiary to an election will a petition to have property characterized as community property result in a forfeiture.

In this case, Mrs. Swonetz sought to have property characterized as joint tenancy property and Mr. Swonetz's will did not call for an election of rights. Accordingly, Mrs. Swonetz's petition, though ultimately seeking return of joint tenancy property, cannot be held, under these cases and the mandates of the Probate Code to require a forfeiture under the no contest clause.

## DISPOSITION

Having treated this appeal as a petition for writ of mandate, we deny the writ.

Lillie, P. J., and Woods, J., concurred.